[No. 3111. Decided April 22, 1899.]

## ANNA M. DOW, *Appellant,* v. C. C. DEMPSEY, *Respondent.*

FRAUDULENT CONVEYANCES—RIGHTS OF PARTIES—INSTRUCTIONS.

Upon an issue as to whether an attempted transfer of property by a debtor in failing circumstances was to a *bona fide* creditor or merely to protect the debtor against creditors, error cannot be predicated upon an instruction charging the jury that, if the transfer was made for the purpose of protecting the interest of the debtor, it was not a sale and could not protect the transferee in the possession of the property, when the court, elsewhere in its instructions, fully charged as to the right of a failing debtor to prefer creditors and that a preferred creditor would not be affected by the debtor's fraud in making the transfer with intent to defraud other creditors, if the one preferred did not know of, and participate in, the fraud.

SAME.

Where the *bona fides* of a sale between a debtor and an alleged creditor is in issue, evidence tending to establish a partnership between them falls within the issues, for the purpose of establishing that the transfer was fraudulent as to creditors; and where there is some evidence as to the existence of such a partnership, it is not error for the court to charge the jury as to what constitutes partnership.

PARTNERSHIP—WHEN ARISES—AGREEMENT TO SHARE PROFITS.

Where two persons agree to engage in a joint adventure, one to furnish the capital, the other the skill and labor, and both to share the profits, nothing being said about losses, the law presumes an agreement to share the losses also.

REPLEVIN—NECESSITY FOR DEMAND—INSTRUCTIONS.

In an action of replevin to recover from a sheriff goods alleged to have been wrongfully seized by him, a charge to the jury that if there was a demand made upon the sheriff for the goods after

he had turned the property over to a receiver and no longer had them in his possession, then the verdict should be for defendant, is not erroneous on the ground of assuming that it was necessary for plaintiff to prove a demand, in order to recover, when the instructions have already fully and clearly stated to the jury the principles of law governing cases where demand is necessary and where it is not.

REPLEVIN AND TROVER DISTINCT ACTIONS.

Where in an action of replevin it appears that the defendant was not in possession of the property claimed at the time of demand or the commencement of the action, plaintiff cannot recover; and the fact that in such an action a recovery of the value of the property is sought, in case delivery cannot be had, would not warrant plaintiff in treating the action as one for the conversion of the property.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*Belden & Belden* and *Crow & Williams,* for appellant.
*Charles P. Lund* and *Samuel R. Stern,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The record discloses the following facts: For some time prior to February 2, 1898, one H. C. Jeffers was running a merchandise store in the city of Spokane, Spokane county, Washington, under the name of the Spokane Notion Company. He had become heavily involved for goods purchased, and also claimed to be owing the appellant, who is his mother-in-law, some $1,845, for money borrowed. Shortly prior to the date mentioned, one of these creditors brought an action against Jeffers for a small amount, and Jeffers consulted an attorney as to the best method of securing the appellant in the amount due her, suggesting giving a bill of sale or chattel mortgage covering his stock of goods and fixtures. Nothing, however, was done in this regard, and Jeffers left shortly after, going to California, for what purpose is not made

to appear, leaving his business in charge of his clerk. On February 1, 1898, the attorney whom Jeffers had consulted, learning that others of Jeffers' creditors were threatening suits and attachments, sent him a telegram as follows:

"Attachment threatened. Shall we deliver stock to Mrs. Dow as your agent? Wire answer."

To this Jeffers replied:

" You have consent to act as you see fit to protect my interest. Deliver stock as suggested. Wire Los Angeles."

It is not made entirely clear whether the attorney representing Jeffers called on the appellant prior or subsequent to the time of these telegrams, but it is shown that he procured from her at some time the written evidences of appellant's claim against Jeffers.

On the morning of February 2, 1898, appellant and the attorney went to the store of Jeffers, where some conversation was had as to the value of the goods and as to the amount of credit Jeffers should receive for the transfer of the stock. The parties agreed upon $750, and the clerk, at the request of the attorney, handed appellant the key to the store, the attorney saying, "Mrs. Dow, I deliver you this entire stock of goods and fixtures in consideration of $750, to be applied upon the indebtedness of Mr. Jeffers." The appellant assumed charge of the property at once, and proceeded, with the clerk, to take an inventory of the stock. On the same day one B. Hart, a creditor of Jeffers, brought an action against him, in which an attachment was issued and placed in the hands of the respondent, for service, the respondent being at that time sheriff of Spokane county. The respondent executed the writ by levying upon the stock of goods and fixtures, taking them from the possession of the appellant. On the 4th day of February, in the action of B. Hart against Jeffers, the

plaintiff applied for and procured the appointment of a receiver for the attached property. The receiver duly qualified, and the respondent, upon the order of the court, turned the attached property over to him. The receiver, pursuant to subsequent orders of the court, sold and disposed of the property, and on the 26th day of February, 1898, filed his report, showing the sale of the goods by him, the payment of the claim of B. Hart, the costs of receivership, and a balance in his hands unexpended. The court approved his account, and directed that the balance be paid to the clerk of the court, and that the receiver be discharged. The appellant began this action against the respondent on the 19th day of March, 1898, to recover the possession of the property attached. The complaint alleges ownership of the property by the appellant, its value, that the respondent wrongfully and without appellant's consent took possession of the same, and still wrongfully and without her consent detains it; that before the commencement of the action she demanded of respondent possession of the personal property, which demand was refused; and demands judgment against respondent for the recovery of the possession of said personal property, or, in case delivery thereof cannot be had, judgment for its value; the complaint being, in form, that commonly used in this state for the recovery of specific personal property. The respondent answered, denying generally the allegations of the complaint; and, for a separate and affirmative defense, alleged that the property attached was the property of Jeffers; that the sale to the appellant was a pretended sale, and made for the purpose of placing the property beyond the reach of the creditors of Jeffers; that the appellant was never the owner of the property or any part thereof, and set out the action of B. Hart against Jeffers, the seizure of the property under writ of attachment issued in that action, the appointment of the receiver,

the delivery of the property attached by the respondent to the receiver, the report and account of the receiver, its approval by the court and the receiver's discharge; alleges that appellant had full notice and knowledge of all the said proceedings, and had made no claim or demand upon said receiver for any of said property. The reply of the appellant was a general denial of the new matter contained in the answer. On the issues thus made a trial was had, which resulted in a verdict and judgment for the defendants. From that judgment this appeal is taken.

The appellant assigns error upon the court's charge to the jury. The parts of the charge excepted to are as follows:

" I charge you that if the transfer, if there was such a transfer, was made for the purpose of protecting the interest of Jeffers, that it was not a sale and could not protect Mrs. Dow in the possession of the property, or protect the property from the attachment of creditors."

" I charge you farther that if Jeffers was to furnish the labor and Mrs. Dow was to furnish the capital and then they two were to divide the profits of the business, that that would make them partners, and a transfer from Jeffers to Dow would not protect Mrs. Dow in the possession of the property, nor protect the property against the attachment of creditors."

" I charge you, providing you should find that the property did at that time belong to the plaintiff, she was entitled to the possession. If you should find from the evidence that there was a demand made, but it was made after Mr. Dempsey had turned the property over to a receiver, and that at that time he did not have the property in his possession, and could not have responded to the demand, then you will have to find for defendant."

1. The appellant argues that the first of these instructions is erroneous and does not correctly state the law, because it is immaterial what Jeffers' purpose was in making the transfer, provided the appellant acted in good faith

and was herself guilty of no fraud; that if appellant took the property for the purpose of paying a *bona fide* pre-existing debt, and no secret trust existed by which Jeffers retained ownership of, or control over, the property, the sale is valid, notwithstanding Jeffers may have had some interest to protect which induced him to make the transfer; and that the effect of the instruction is to deny the right of a debtor in failing circumstances to prefer a creditor.

In determining whether the charge of the court to the jury be erroneous, the real inquiry is not, we apprehend, what construction may be put upon the language used, but is, rather, what did the jury understand the court to mean by the language used.   To ascertain this meaning an appellate court must put itself in the situation of the jury; it must look to the issues before the jury, to the evidence offered by either party upon those issues, and to the charge of the court as a whole.   In the present case, whether there was a sale from Jeffers to appellant and whether, if one was made, it was made in good faith, or in fraud of creditors and in the interest of Jeffers, were questions directly in dispute, on which the appellant maintained both the sale and the good faith of the transaction, and the respondent contended to the contrary.   To sustain her contention the appellant put in evidence the telegrams above mentioned, her good faith, Jeffers' indebtedness to her, his previously expressed desire to prefer her to his other creditors, and such of the surrounding circumstances as she deemed material.   These telegrams, it will be noticed, are ambiguous, or at least capable of different constructions.   The respondent contended that the very words of the telegram from Jeffers to the attorney—"You have authority to act as you see fit to protect my interest"— shows that no *bona fide* sale was intended, but that the only authority meant to be conferred on the attorney was

authority to put the property beyond the reach of Jeffers' creditors; and in support of this he put in evidence the indebtedness of Jeffers, his conduct, and such of the circumstances surrounding the transaction as he thought to his interests.     It thus became the duty of the court to charge the jury upon both branches of this issue.     This the court did, using the following language:

"Now, gentlemen, I charge you that a failing debtor has a right to prefer a creditor, if it is done in good faith and not for the purpose of defrauding other creditors. I charge you, further, that, so far as the question of fraud is concerned, it would not make any difference what the fraudulent intent of Jeffers was, unless you find from the evidence that Mrs. Dow knew of that fraudulent intent and participated in the fraud.     I charge you that the transfer of the property merely to Mrs. Dow, as Jeffers' agent, would not be such a sale as would protect Mrs. Dow in the possession of the property, or protect it from the attachment of creditors.     I charge you that if the transfer, if there was such a transfer, was made for the purpose of protecting the interest of Jeffers, that it was not a sale, and would not protect Mrs. Dow in the possession of the property, or protect the property from the attachment of creditors."

From this it is evident that the jury could not have understood the court to mean, by the paragraph excepted to, that a debtor in failing circumstances could not prefer a creditor, or that fraud on the part of Jeffers, not participated in by the appellant, would avoid the sale; for the court charged to the contrary, in plain and express language.  As thus narrowed, the court's language becomes plain.     It simply announces the familiar rule that the transfer must not have had for its sole purpose the protection of Jeffers' property against the claims of his creditors.

2.     The second instruction complained of correctly defines a partnership.     It is true, no mention is made of losses in the definition, but this does not render it incom-

plete. If two persons agree to engage in a joint adventure, one to furnish the capital and the other the skill and labor, and both are to share the profits, the law presumes an agreement to share the losses also, for there is no more reason to hold that the one should bear them than the other.

" Except in cases specially provided for by statute, an agreement to share profits, nothing being said about losses, amounts *prima facie* to an agreement to share losses also; for it is but fair that the chance of gain and of loss should be taken by the same persons; and it is natural to suppose that such was their intention if they have said nothing to the contrary." Lindley, Partnership, p. 12.

It is not denied that an agreement may be made, by the terms of which one party may furnish another a certain amount of capital to be used in a business conducted by the other, and receive as compensation for the advancement a share of the profits of the business, without creating the partnership relation; nor is it denied that a clerk, agent or employee may not receive a fixed proportion of the profits of a business as compensation for services without becoming a partner in the enterprise. Cases of this kind, however, do not change the rule itself, but are exceptions to it arising out of the express agreement of the parties.

It is further contended that this instruction is erroneous because there was no evidence before the jury tending to show that appllant had any interest in the business conducted by Jeffers; and that, even admitting there was such evidence, the instruction was too general, in that it did not call the attention of the jury to the fact that the money may have been furnished as an advancement, and a share of the profits taken in lieu of interest, and with no intent to create a partnership. We cannot agree with either contention. There was undoubtedly some evidence before the jury from which they could have found that the appel-

lant was a partner in the business conducted by Jeffers.
And, while it would have been proper for the court to have
called the jury's attention to the matter, the omission of
which is complained of, it is not reversible error to omit
to do so.

" If the instruction was too general in its terms, it was
the duty of the appellant to ask the court to make it more
specific, instead of merely objecting to it in the form as
given." ANDERS, J., in *Enoch v. Spokane Falls & North-*
*ern Ry. Co.,* 6 Wash. 393 (33 Pac. 966).

See, also, *Box v. Kelso,* 5 Wash. 360 (31 Pac. 973);
*Brown v. Porter,* 7 Wash. 327 (34 Pac. 1105).

The question whether or not there was a sale of the
property from Jeffers to appellant, or, if one was made,
whether it was *bona fide* as to creditors, was directly in
issue by the pleadings.    Under these issues it was com-
petent to prove a partnership in the property between the
parties making and receiving the transfer, for the purpose
of showing that such transfer was void as to creditors.
Hence it was not error for the court to give the instruction
complained of because without the pale of the issues.

3.    Counsel for appellant insist that the last of the
instructions excepted to is erroneous for the reason that
it assumes that it was necessary for appellant, in order to
recover, to prove a demand, while the law is that demand
is necessary only in those cases where the holder came
rightfully in possession of the property, and the wrong con-
sists in detaining the property after his right to the posses-
sion has ceased.    This view, we think, mistakes the mean-
ing of the instruction.    In the paragraph of the charge
immediately preceding the one in question, the trial judge
fully and clearly stated to the jury the principles of law
governing cases where demand is, and where it is not,
necessary.    There the jury were distinctly told that if
they found from the evidence that the appellant was in

possession of the property at the time the respondent seized it under the writ of attachment, and was in fact the owner and entitled to the possession of the property, such seizure was wrongful, and no demand was necessary in order to enable the appellant to recover. It is clear from this, and it seems to us, also, from the very language of the instruction complained of, that the trial judge meant to announce to the jury the rule that recovery cannot be had in this form of action unless at the time the action was commenced the property was in possession of the respondent,—giving the appellant the benefit of the modification of the rule, to wit, that the action will be deemed commenced at the time demand is made for the return of the property.

But, counsel say, conceding this, the instruction is erroneous, because the complaint states a cause of action in trover, as well as replevin, and the instruction is inapplicable to an action in trover. This instruction is not erroneous. The primary object of the action of claim and delivery, under the code, is to recover the possession of personal property in specie, and the gist of the action is the wrongful detention of the property by the defendant. In such an action it is necessary for the complainant, in order to state a cause of action, to allege that the property, recovery of which is sought, is wrongfully detained by the defendant (Bal. Code, §§ 5418, 5419). And a failure to prove the allegation must of necessity be a fatal variance. True, the action has as its secondary object the recovery of the value of the property in case delivery cannot be had, but the purpose of this is to prevent the action from becoming fruitless or ineffectual by reason of the property being lost, destroyed or disposed of by the holder, after action brought. It never becomes the primary object of the action, nor does it change the action into one for

damages for the tortious taking and conversion of personal property.

That a distinction exists between actions of claim and delivery under the code, and an action to recover damages for the tortious taking and conversion of personal property, has always been recognized by this court. In *Dawson v. Baum,* 3 Wash. T. 464 (19 Pac. 46), it was held that, for wrongs of the character here complained of, the injured party has a choice of remedies, among which are enumerated the action in the nature of replevin (the present action), and trover to recover the value of the property; and that judgment in one form of action is a bar to relief in any other. This case was cited with approval in *Scott v. McGraw,* 3 Wash. 675 (29 Pac. 260), and the rule therein announced approved, the court saying:

" We prefer to adopt the view expressed by the court in *Dawson v. Baum, supra,* that the plaintiff may have a choice of either of the remedies provided by statute, but that judgment in one action would be a bar to relief in the other."

The distinction here pointed out, and the law as laid down in the charge of the court, appears to be abundantly sustained by authority. In Wells on Replevin, § 134, the author says:

" It is also a rule in replevin that the action only lies against a defendant who is in possession of the goods at the time demand is made or suit is begun. In order to hold a party liable for immediate delivery of the goods, he must have the actual or constructive possession of them at the time, so that he can comply with the demand if made, or with the mandate of the writ for delivery if it should issue against him."

In Cobbey on Replevin, § 61, the rule is stated thus:

" To enable plaintiff to maintain an action for the recovery of specific personal property, the defendant must be in possession thereof at the commencement of the action.

Where the petition alleges that the defendant is in possession and the proof shows the contrary, there is such a variance between the allegations and the proof as disables plaintiff from recovering."

Mr. Pomeroy, speaking of the action to recover the possession of chattels under a code, says:

" The common-law rules as to parties defendant in an action to recover possession of chattels have not been in any manner affected by the new procedure.    Such actions must be brought against the party or parties in actual possession of the chattel demanded by the plaintiff.    If this actual possession is in one, he must be the sole defendant, if in two or more jointly,—as, for example, in a partnership,—they must all be made defendants."    Pomeroy, Code Remedies, § 297.

In the case of *Willis v. De Witt,* 3 S. Dak. 281 (52 N. W. 1090), under a statute almost the exact counterpart of our own, it was said:

" Our Code of Civil Procedure contains provisions governing the action for the recovery of specific personal property unlawfully detained, when an immediate delivery is claimed by the plaintiff (Sections 4972-4983); and the form of the verdict (Section 5063) and judgment (Section 5099) are given.    But these provisions do not recognize any distinction between an action for the wrongful taking and unlawful detention, simply.    The evident design of the lawmakers was that this action should take the place of and be substituted for the old actions of replevin and detinue.    The action under the Code is based upon plaintiff's right to the possession and the unlawful detention by the defendant.    This is made quite clear from the facts required to be stated in the affidavit for the immediate delivery of the property, if an immediate delivery is claimed.    The affidavit required seems to be the same in all cases, and must contain the statement that the property 'is wrongfully detained by the defendant.'  This affidavit could not truthfully be made by a party unless

the property was actually or constructively in the possession or under the control of the defendant.   We are clearly of the opinion, therefore, that when it appears, from the findings of a referee, verdict of a jury, or evidence in the case, that the specific property sought to be recovered is neither actually nor constructively in the possession or under the control of the defendant when the action is commenced, the action cannot be maintained against him."

In *Gardner v. Brown,* 22 Nev. 156 (37 Pac. 240), the court said:

" This is an appeal from an order overruling a motion for a new trial.   The action was in the ordinary form of claim and delivery under the statute for the recovery of the possession of a certain number of cattle and horses alleged to be withheld and detained by the defendants. The answer justifies the taking by the defendants, one of whom is the sheriff of Lyon county, under an execution against J. H. Gardner, a son of the plaintiff, as his property, and a subsequent sale in the month of January, 1893, two months before this suit was commenced.   The proofs showed without question that the cattle were sold as alleged in the answer.   Upon these facts the question arises, has the plaintiff established a cause of action in claim and delivery against the defendants?   In order to have established his case, he should have shown a possession of the property in the defendants, as he had alleged in his complaint.   The detention is the gist of the action, and recovery of the possession of the property its primary object. The statute has provided all the appliances to this end, and the allegations of the complaint are consistent with this view.   The proofs show a fatal variance, and the requirement of the statute that the complaint shall contain a logical statement of the facts constituting the cause of acion has been disregarded."

Other cases sustaining the rule announced in the charge of the court are the following:  *Davis v. Van De Mark,* 45 Kan. 130 (25 Pac. 589); *Moses v. Morris,* 20 Kan. 208; *Riciotto v. Clement,* 94 Cal. 105 (29 Pac. 414); *Haughton v. Newberry,* 69 N. C. 456; *Aber v. Bratton,*

60 Mich. 357 (27 N. W. 564); *Hall v. White,* 106 Mass. 599; *Depriest v. McKinstry,* 38 Neb. 194 (56 N. W. 806); *Mitchell v. Roberts,* 50 N. H. 486; *Feder v. Abrahams,* 28 Mo. App. 454; *Coffin v. Gephart,* 18 Iowa, 256.

The appellant also urges that there was no evidence before the jury tending to impeach the good faith of the sale, and that her motion for a new trial should have been granted.    We have carefully examined the record and think that upon the whole of the issues there was a substantial dispute in the testimony.    The weight of the evidence was a question for the jury, and this court is not authorized to reverse their finding, even though we might conclude that the weight of the evidence was against their conclusion.

The judgment is affirmed.

GORDON, C. J., and DUNBAR and REAVIS, JJ., concur. ANDERS, J., dissents.