[No. 7884.  Department Two.  September 25, 1909.]

J. A. MEYERS, *Appellant*, v. W. H. GERHART *et al.*,
*Respondents.*[1]

REPLEVIN—ACCESSION—LOGS—CHANGE OF FORM—GOOD FAITH. Replevin does not lie for the product of sawlogs cut into lumber and commingled by an innocent purchaser with its own property, without notice that the vendor had trespassed and cut the logs on plaintiff's land.

PRINCIPAL AND AGENT — NOTICE TO AGENT—IMPUTED KNOWLEDGE. Knowledge of the vendor's servant that logs sold had been wilfully cut and converted by the vendor, cannot be imputed to the vendee from the fact that the vendee afterwards employed the same servant to take out part of the logs, the knowledge having been acquired in the service of the vendor and not communicated to the vendee.

REPLEVIN — ACCESSION — LOGS — LOSS OF IDENTITY — LACHES OF OWNER. Where the owner of converted logs stood by without making

[1]Reported in 103 Pac. 1114.

any claim until after they were manufactured into lumber and sold by an innocent purchaser, he cannot maintain replevin for the product, or for a like quantity of other product.

REPLEVIN — RELIEF — ISSUES—FATAL VARIANCE—CONVERSION. An action of replevin must fail when the plaintiff fails to show that the property is wrongfully detained by the defendant, and incidental relief cannot be given upon showing a conversion, as that would be a fatal variance.

· Appeal from a judgment of the superior court for Stevens county, Carey, J., entered May 25, 1908, in favor of the defendants, notwithstanding a verdict for the plaintiff, after a trial on the merits, in an action of replevin. Affirmed.

*Slater & Allen*, for appellant.

*Danson & Williams* and *Jesseph & Grinstead*, for respondents.

PARKER, J.—This is an action of replevin. By his complaint, plaintiff alleges in substance, that on September 12, 1907, and for a long time prior, he was and still is the owner and entitled to the possession of 149,764 feet, board measure, of lumber, and 44,800 lath, of the total value of $3,395.61, which was then, and at the commencement of the action, in the possession of the defendants, at the sawmill heretofore known as the Meyers Falls Lumber Company sawmill, near the town of Meyers Falls, in Stevens county; that on or about September 13, 1907, he demanded possession of said lumber and lath from the defendants, which they refused and still refuse to deliver to him; and they wrongfully detain the same, to his damage in the sum of $100. Judgment is prayed for in the usual form, in the alternative, and also for $100 damages for the wrongful detention. The answer of defendants is in substance a denial of the material allegations of the complaint.

The action was commenced on October 31, 1907, at which time the plaintiff, by delivering to the sheriff affidavit and bond in usual form, caused the sheriff to take into his posses-

sion, from the possession of the defendants, lumber and lath approximately of the quantity claimed in his complaint, which was thereafter returned to defendants by the sheriff upon re-delivery bond being furnished by them. The cause proceeded to trial before the court and a jury. At the conclusion of the plaintiff's evidence, and also at the conclusion of all the evidence, defendants' counsel challenged the sufficiency of the evidence to entitle plaintiff to recover, and moved the court to withdraw the case from the jury and render judgment for defendants, which motion was denied; the court at the same time expressing doubts as to plaintiff's having pursued the proper remedy. The jury returned a verdict in favor of plaintiff, finding that he was entitled to 149,381 feet of lumber and 44,800 lath, finding the total value thereof to be $2,629.77, and that plaintiff was damaged $100. Thereafter defendants, by their attorneys, moved the court to set aside the verdict and render judgment in their favor notwithstanding the verdict, which the court granted, and rendered judgment accordingly, from which the plaintiff has appealed.

The facts which are necessary for our consideration are either admitted or conclusively proven, and may be summarized as follows: Appellant bases his right to recover upon the alleged wrongful taking from his land by the Meyers Falls Lumber Company and by respondents, of sawlogs which he claims have been converted into lumber and lath in the quantity alleged in his complaint, though it is not claimed that the lumber and lath manufactured from appellant's logs can be identified, nor that the lumber and lath taken by the sheriff was produced from his logs. During the summer and fall of 1906, the Meyers Falls Lumber Company was engaged in logging from the land of L. W. Meyers, the father of appellant, from whom it had purchased the standing timber thereon. Appellant is the owner of land adjoining and immediately to the north, with standing timber thereon. While cutting and removing the timber so purchased from

L. W. Meyers, the employees of the Meyeis Falls Lumber Company went over the line and cut trees into logs, upon the land of appellant, and removed practically all of them, with logs taken from the land of L. W. Meyers, to the sawmill, where they became so intermingled as to entirely lose their identity.

The sawmill was running in the fall, up until November 5, when it stopped for the year. A considerable portion of the logs, irrespective of where they came from, had then been sawed into lumber, and some of the lumber had been shipped out to market before December 8, 1907, on which date the Meyers Falls Lumber Company sold out to respondents, conveying to them all the remaining lumber and loose logs. One Gray had been foreman for the Meyers Falls Lumber Company, and whatever knowledge it had of the cutting of logs upon the land of appellant was only such as could be imputed to it by reason of such agency. After the sale to respondents, Gray continued for a time to act as foreman for respondents, and in removing the remainder of the logs to the mill from the land of L. W. Meyers, caused to be removed to the mill a few remaining logs from appellant's land which had been cut before the sale. It is not claimed that any trees upon appellant's land were cut down after the sale. The identity of these few logs thus became lost as the others had. This occurred during December immediately following the sale.

Neither of the respondents had any knowledge of any of the logs having come from appellant's land until after their identity had become entirely lost, the first information received by them being by a letter from appellant, dated January 18, 1907, wherein he claimed that the logs had been taken from his land by the Meyers Falls Lumber Company, and that the same were then in the log ricks or lumber yards of respondents, as successors of that company, and notifying them that he would claim the product from his timber in whichever form it might be. No demand was made in the let-

ter for any logs or lumber. In April, 1907, appellant says he ascertained the amount of logs taken from his land, by measurement from the stumps and tops of the trees left on the ground, and that he found the quantity of logs taken was such that lumber and lath, of the quantity alleged in his complaint, could be manufactured therefrom.

About April 1, 1907, the mill again started sawing the logs into lumber. On June 15, 1907, appellant notified respondents by letter of the amount of the lumber and lath he had ascertained the logs taken from his land would make, and claimed the same was worth $3,398.33. No demand was made for lumber or lath, though this letter might be construed as a demand for the value, as he states therein: "I shall expect a settlement of this account soon." At that time, according to his own statement, all of the logs from his land had been sawed into lumber. Appellant never made demand for any logs, but on September 12, 1907, made his first demand for the lumber and lath he seeks to recover by this action. Thereafter, on October 31, this suit was commenced and seizure made by the sheriff. Just what proportion the logs from appellant's land bore to the whole quantity of logs they were commingled with, is not very certain, but appellant estimates the whole at 2,000,000 feet or more; so, according to his own figures, the quantity from his land was a comparatively small part of the whole. We have no evidence in the record as to the kind of lumber the logs from appellant's land were sawed into, other than his own statement, or rather opinion. The following from his cross-examination embodies the substance of his knowledge on that subject:

"Q. Do you know . . . how much of it was cut into finishing lumber? A. I do not. Q. Do you know how much was cut into flooring? A. I do not. Q. How much was cut into shiplap? A. I do not. Q. Into siding? A. No, sir. Q. And how much into common lumber? A. No, sir. Q. You don't know anything about that? A. No, sir; only the average cut that such timber would make. Q. And that it might be manufactured into this quality? A. Yes, sir. Q. As a matter of fact

the Gerhart-Bradrick Lumber Co. [respondents] had three different yards at Meyers Falls, didn't they? A. They did. Q. Do you know into which particular yard your lumber went? A. Not in any one yard, no. The clear lumber and high grades went into one, the second qualities went into the other and the rest went into another. Q. As a matter of fact you knew all of this at the time you made that demand? A. Yes, sir. Q. That it was impossible for the Gerhart-Bradrick Company to have segregated out any logs that came from your land, and that it was impossible to segregate any lumber that came from those logs? A. Yes, sir."

Respondent Bradrick, while testifying as a witness for appellant, said they took over from the Meyers Falls Lumber Company approximately 750,000 feet of logs, which, according to appellant's estimate of the whole, was less than half. The balance, more than half, was evidently sawed into lumber before the sale. He also testified, while a witness for appellant, that this lumber was being shipped out during the winter months, and that in the spring of 1907 they had the yards quite well cleaned of lumber, and also continued to ship after the starting of the mill in the spring. He could not say that there was any lumber in their yards on September 12, the time of the demand, which came from the 750,000 feet of logs taken over from the Meyers Falls Lumber Company.

The principal contention of the learned counsel for appellant, as we understand them, is that the original taking of the logs from appellant's land, mingling them with other logs, and manufacturing them into lumber, was willful and with full knowledge of the invasion of his rights; and therefore the fact that his timber was thus changed in form, and the value thereof increased, did not change the title to the property, so as to destroy his right to recover possession thereof; and even though the identity of the property is lost, he has the right to recover property of the kind and quantity into which it was converted, though it may be physically other property, in whole or part.

We will not enter into the question of the knowledge and

willful invasion of appellant's rights by the Meyers Falls
Lumber Company, but, for the sake of argument only, as-
sume that it did invade appellant's rights with full knowledge
thereof as he claims; for he is not in this action seeking to
recover anything from the Meyers Falls Lumber Company,
but from these respondents as their successors in interest.
We think, so far as the rights of respondents are to be meas-
ured by the innocent or willful acts which involved them in
this controversy, it is their own knowledge and their own
acts which are to be considered. If we were dealing with the
question as if appellant was seeking to recover from the
Meyers Falls Lumber Company, conceding it willfully com-
mitted the trespass, and the identity of the property was not
lost, or that it went into a common mass, all of which was of
the same in kind and quality, and still in its possession at the
commencement of the action, the matter would be compara-
tively easy of solution in appellant's favor, under the general
rule that,

"Title to chattels is not changed by bestowal of labor or
skill upon them, by a willful wrongdoer, in manufacturing
them or changing them into a commodity of another kind.
No matter how great the transformation may be, the true
owner may follow and reclaim his materials as far as he can
prove their identity;"

as stated in the syllabus to *Silsbury v. McCoon*, 3 N. Y.
(Comstock) 379, 53 Am. Dec. 307, which is cited and quoted
at length, in Cobbey on Replevin (2d ed.), § 909, as the lead-
ing case in this country on the subject. In that case the
court, referring to the agreement of the common law with
the civil law in certain respects, says further,

"They agree in another respect, to wit, that if the chattel
wrongfully taken, afterwards come into the hands of *an in-
nocent holder*, who, believing himself to be the owner, con-
verts the chattel into a thing of different species so that its
identity is destroyed, the original owner cannot reclaim it.
Such a change is said to be wrought when wheat is made into
bread, olives into oil, or grapes into wine. In a case of this

kind the change in the species of the chattel is not an intentional wrong to the original owner. It is therefore regarded as a destruction or consumption of the original materials, and the true owner is not permitted to trace their identity into the manufactured article, for the purpose of appropriating to his own use the labor and skill of the innocent occupant who wrought the change; but he is put to his action for damages as for a thing consumed."

See, also, Cobbey, Replevin (2d ed.), § 396; Wells, Replevin (2d ed.), § 216; Schouler, Personal Property (3d ed.), § 49.

This leads us to inquire concerning respondents' knowledge and good faith in acquiring the logs and sawing them into lumber and lath. We have seen that they had no knowledge whatever of any claim of appellant until January 18, 1907, some considerable time after the purchase of the logs and lumber from the Meyers Falls Lumber Company and the loss of the identity of all the logs by being commingled with a much larger mass of others, and the sawing of a considerable portion thereof into lumber. Counsel for appellant argue that the knowledge of Gray and his removal of the few remaining logs, already cut, from the land of appellant to respondents' log ricks, soon after the sale, while he was in their employ, must be imputed to respondents, and their good faith and honesty of purpose judged as though they actually knew these few logs were thus taken from appellant's land. The knowledge of Gray as to any of these logs coming from the land of appellant was acquired by him long before his employment by respondents and was not communicated to them, nor did they have any knowledge which would put them upon inquiry, or would raise the slightest suspicion that their employee was trespassing upon appellant's land. We think, under these circumstances, the rule that knowledge which an agent has acquired in business other than that of his principal cannot be imputed to the principal, should apply here. *Taylor v. Taylor* (Texas), 29 S. W. 1057; *Pringle v. Dunn*, 37 Wis. 449, 19 Am. Rep. 772; *Wheeler v. McGuire*, 86 Ala. 398, 5 South. 190, 2 L. R. A. 808; *Pepper & Co. v. George,*

o

51 Ala. 190; *Pacific Mfg. Co. v. Brown,* 8 Wash. 347, 36 Pac. 273.

It is apparent from the authorities that the good faith and honesty of purpose with which the one acquiring the property and working the change therein has acted is the controlling influence in determining his title to the property in its changed form. We do not think one's good faith should be tested by any technical rule of imputed or constructive knowledge, when he has no actual knowledge and no knowledge which would put a reasonably prudent man on inquiry. A man's motives cannot be affected by a fact of which he has no actual knowledge, or no knowledge which would suggest inquiry relative thereto. We think the facts of this case show beyond controversy that respondents had no knowledge of any kind of the claim of appellant until long after the identity of all the logs had become lost.

So far, we have considered the question of respondents' good faith touching their acquiring of the logs and lumber, up until the 18th day of January, 1907, when appellant wrote to them that his logs had been taken by the Meyers Falls Lumber Company and that they were in some form among respondents' logs or lumber, but without any demand therefor. At this time, we are to remember, the identity of the logs had become entirely lost without any fault of respondents, a large part of the total mass, probably half or more, had been sawed into lumber, and a considerable part of that lumber shipped out to market, and it was impossible to tell what portion of the logs from appellant's land went into that lumber.

Nothing further was communicated by appellant to respondents until June 15, 1907, when he notified them of the quantity of lumber and lath the logs from his land would make, as he estimated; claiming the value thereof in its manufactured form to be $3,398.33, and that, using his own words, "I shall expect a settlement of this account soon." At this time, according to his own statement, all of the timber

from his land had been sawed into lumber. Indeed, he delayed making this communication to respondents as to the quantity and value, which might well be argued to be a demand for the price of the lumber, without excuse, and for the evident purpose of waiting until he was sure the entire mass of logs in which the logs from his land had lost their identity had been sawed into lumber. This is evidenced by a letter he wrote to respondents three days later, in which he is careful to inform them, "The last of the timber from my land in this claim was sawed last week." At this time, it is further to be remembered, that according to the testimony of Bradrick, while a witness for appellant, they had been continuously shipping the lumber every month, even after the yards had been quite well cleaned of lumber in the spring. It is quite plain from the undisputed facts, not only that the logs from appellant's land had entirely lost their identity months before, and the entire mass into which they went had about this time been sawed into lumber of different kinds and values, but that a very large part of the entire mass had been shipped out to market and was not then in the possession of respondents. This shipping continued, which still further reduced the amount remaining in their possession, until after September 12, three months later, when appellant made his first and only demand for the property preliminary to the bringing of this action, which was still delayed until October 31, a month and a half later. In Cobbey on Replevin (2d ed.), § 395, it is stated:

"The tendency of the courts in applying the rule . . . has been to require of the plaintiff in such cases a reasonable diligence in asserting his rights, and where the defendant is not a willful wrongdoer, without the shadow of legal excuse, this should always be required of plaintiff." See, also, Wells, Replevin (2d ed.), § 217.

We believe appellant's delay in claiming the property, as shown by the undisputed facts, should have great weight in the determination of respondents' rights in this case. It is not pretended that the lumber from appellant's logs can be

identified, nor even that his logs could be identified before being sawed into lumber. It is only a matter of surmise that any of the lumber claimed by appellant, and caused by him to be seized, was the physical product of logs from his land. The theory upon which learned counsel for appellant seem to base appellant's right to recover this lumber and lath is that they can take from the mass of lumber in respondents' yards a quantity equal to that which the logs from appellant's land would produce. We do not lose sight of the rule which enables one to recover his property from a common mass with which it has become commingled, when both are the same in kind and quality, and are so homogeneous both before and after commingling as to render actual physical identification of one part of the mass from the other, of no consequence, like corn, wheat, oil, etc. Such conditions apparently constitute an exception to the rule requiring actual physical identification of the property sought to be recovered by replevin, upon the theory that one part of the mass being alike in kind, quality and value, to all other parts thereof, it is of no consequence to the rights of the parties, what part each takes, beyond the mere question of quantity. This exception to the general rule requiring identification is recognized in the following authorities: Wells, Replevin (2d ed.), § 203; Cobbey, Replevin (2d ed.), §§ 401, 402; *Henderson v. Lauck*, 21 Pa. St. 359; *Inglebright v. Hammond*, 19 Ohio 337, 53 Am. Dec. 430; *Wilkinson, Carter & Co. v. Stewart*, 85 Pa. St. 255; *Eldred v. Oconto Co.*, 33 Wis. 133; *Ryder v. Hathaway*, 21 Pick. 298.

The exact limits of the application of this exception are not very clearly defined, some of the cases going so far as to allow the claimant to take his proper quantity from a mass of wood, or logs, but only where the kind and quality of each owner were alike. This is not a question of appellant's taking a quantity of logs from a common mass. Conceding that his logs were in kind and quality like the balance of the others (some two million feet) which they became commingled

with, he claims to have known the quantity he was entitled to
in April, 1907, at which time there were still in the ricks of
respondents, not yet sawed into lumber, a large quantity of
this mass of logs, aggregating several times the quantity he
claimed had been taken from his land. He not only did not
demand or seek to recover from this mass, but he never did
demand or seek to recover any logs, but waited, seeing it was
being converted into lumber of varying kinds and values; and
after feeling sure the physical material was all so changed
into more valuable form, then for the first time, made a com-
munication to respondents on June 15, which, if it can be
construed as a demand for anything, was a demand for
money, the first demand for the lumber being made three
months later.

No authority has been called to our attention, and we
think there is none, holding a claimant to have the right to
take from a common mass with which his property has lost
its identity without fault of the one from whom he claims,
where the property has undergone such physical change as in
this case; especially when he has stood by and watched the
gradual conversion into something much more valuable, of
varying kinds and values, without making claim or demand
for his property in specie, until after such change has oc-
curred, as this appellant has done. We think under the facts
here admitted or conclusively shown touching the conduct of
both the appellant and respondents, the former cannot law-
fully recover the lumber and lath claimed by him.

This brings us to the question of whether or not the judg-
ment of the lower court should be in all respects affirmed, or
the cause remanded with instructions to grant a new trial, as
contended for by learned counsel for appellant, in the event
of our conclusion that appellant is not entitled to recover the
property in specie, their contention being that the cause
should be sent back for retrial as in the nature of an action
for damages for wrongful conversion of personal property.
This contention, it seems to us, is fully answered by the

former holding of this court in the case of *Dow v. Dempsey*, 21 Wash. 86, 57 Pac. 355, where this court said, at page 95:

"The primary object of the action of claim and delivery, under the code, is to recover the possession of personal property in specie, and the gist of the action is the wrongful detention of the property by the defendant. In such an action it is necessary for the complainant, in order to state a cause of action, to allege that the property, recovery of which is sought, is wrongfully detained by the defendant (Bal. Code, §§ 5418, 5419). And a failure to prove the allegation must of necessity be a fatal variance. True, the action has as its secondary object the recovery of the value of the property in case delivery cannot be had, but the purpose of this is to prevent the action from becoming fruitless or ineffectual by reason of the property being lost, destroyed or disposed of by the holder, after action brought. It never becomes the primary object of the action, nor does it change the action into one for damages for the tortious taking and conversion of personal property."

This being purely an action in replevin to recover specific personal property, it seems plain that when the right to recover such property is determined adversely to the plaintiff, all other alternative or incidental relief which might be granted in that action must necessarily fail also.

We think that the learned trial court correctly disposed of the case, and that its judgment should therefore be affirmed. It is so ordered.

RUDKIN, C. J., MOUNT, CROW, and DUNBAR, JJ., concur.