[No. 28504. Department Two. April 3, 1942.]

FRANK STIPCICH, *Respondent and Cross-appellant*, v. ANTON MARINOVICH *et al., Appellants.*[1]

[1]Reported in 124 P. (2d) 215.

*Pomeroy & Griffith,* for appellants.

*Fred C. Campbell,* for respondent and cross-appellant.

SIMPSON, J.—Plaintiff instituted this action to rescind a contract and for a money judgment. The complaint alleged facts as follows:   On or about the 17th day of August, 1939, plaintiff and defendant entered into the following written agreement:

"CONTRACT

"THIS CONTRACT, made and entered into this 17 day of August 1939, by and between ANTHONY MARINOVICH hereinafter called Marinovich, and FRANK STIPCICH, hereinafter called Stipcich.

"WHEREAS, Marinovich now owns and operates a restaurant business known as the California Oyster House, and—

"WHEREAS, Marinovich has possession of and title to a corporation known as the California Oyster House, Inc., and

"WHEREAS, Stipcich is desirous of purchasing a one-half interest in said business, and—

"WHEREAS, Marinovich is desirous of having Stipcich purchase a one-half interest in said business, and—

"WHEREAS, both parties desire that each shall work to the best interest for the success of the enterprise,—

"Now, THEREFORE, in consideration of the within premises, the mutual promises of one another, in the sum of Three hundred and fifty dollars ($350.) in hand paid to Marinovich by Stipcich, it is hereby mutually agreed as follows:

"(1) Marinovich agrees that all the fixtures, stock of goods, beer and wine licenses, good will and every other thing belonging to the restaurant business, shall be turned over to the corporation, and hereby sets said items over to the corporation.

"(2) It is mutually agreed that fifty ($50.00) dollars each week is to be paid over to Marinovich from the profits of the corporation, said payments to continue until the full sum of Three thousand three hundred ($3300.00) dollars has been paid in this manner to Marinovich, said payments to be made at the Seattle First National Bank.

"(3) When Marinovich has received the above amount of $3300.00 then Marinovich is to set over to Stipcich an amount of stock in the corporation so that the number of shares owned by Stipcich shall equal the number of shares retained and owned by Marinovich.

"(4) It is further mutually agreed that both parties shall use their best efforts in promoting the success of the business and shall receive for said services, salaries to be mutually agreed upon.

"(5) It is further mutually agreed that all business transacted upon the premises and all licenses of any description, shall be taken out in the name of the corporation.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals this 17 day of August 1939.

Witnesses:                          A. Marinovich (Seal)
Allan Pomeroy                       Frank Stipcich (Seal)"

The California Oyster House, Inc., mentioned in the agreement, was a corporation owned solely by defendant. The services contemplated by the agreement were to be performed by plaintiff and defendant as

cooks or chefs in the business and each was to take a regular shift of eight hours. Defendant failed to use his best efforts to promote the success of the business, refused and neglected to perform services as a cook or chef except for a part of a shift on alternate Sundays, absented himself from the business for a period of twenty days, withdrew from the funds of the business the sum of fifteen hundred dollars for his own use and on or about the twenty-third day of August, 1940, without the consent or approval of plaintiff, sold the business to a third party.

Other allegations of the complaint were to the effect that plaintiff had worked in the restaurant for a certain number of days during the year 1939 and the year 1940 and that he was entitled to recover a definite amount for each day's work. Defendants in their answer admitted that the written contract was entered into as alleged, but denied the remainder of the complaint. The case, tried to the court, resulted in a decree rescinding the contract and awarding plaintiff judgment in the sum of $1136.75. Both parties have appealed.

We shall refer to plaintiff as respondent and to defendant Anton Marinovich as appellant.

Appellant's assignments of error all relate to the determination of the question of whether or not respondent and appellant were partners. Respondent's assignments of error call in question the action of the court in not allowing recovery for the full amount asked for in the complaint.

In its findings of fact the court did not decide whether or not the contract was one of partnership. However, in the oral decision rendered at the close of the case the court stated that the contract did not create a partnership.

The facts and circumstances under which this litiga-

tion arose were substantially these: During the year 1934, appellant and respondent organized a corporation known as the California Oyster House, Inc., and under that name operated a restaurant at 513 Third avenue, Seattle, Washington. The restaurant was sold to a man named Sollick, who later, in the year 1939, resold it to appellant. Respondent and appellant then entered into the contract set out in the complaint. The restaurant was occupied by the parties to this action until August 24, 1940, at which time it was sold by appellant to Joseph Rada and wife. This action was commenced shortly thereafter.

The principal question to be decided is whether there was a partnership. In deciding that proposition it is necessary to mention some rules which must be applied. We have said:

"The essential test in determining the partnership relation, is whether the parties intended to establish such a relation; and that, as between themselves, this intention is to be determined by their express agreement, or inferred from their acts and conduct. *Causten v. Barnette,* 49 Wash. 659, 96 Pac. 225." *Yatsuyanagi v. Shimamura,* 59 Wash. 24, 109 Pac. 282.

"There is no arbitrary rule by which it may be determined whether a partnership relation existed in a given instance or not. The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties. . . . It is well settled that no one fact or circumstance will be taken as the conclusive test. Where, from all the competent evidence, it appears that the parties have entered into a business relation combining their property, labor, skill and experience, or some of these elements on the one side and some on the other, for the purpose of joint profits, a partnership will be deemed established." *Nicholson v. Kilbury,* 83 Wash. 196, 145 Pac. 189.

"The question of partnership depends upon the intent of the parties as manifested by their conduct, statements, and written contracts. Generally speaking, if such contracts, statements, and conduct establish an intent, and prove a common venture uniting the labor, skill, or property of the parties for the purpose of engaging in lawful commerce or business for the benefit of all of them, and an agreement to share profits and losses, a partnership is formed. [Citing cases]" *Constanti v. Barovic,* 199 Wash. 117, 90 P. (2d) 724.

See *Purdy & Whitfield v. Department of Labor & Industries,* 12 Wn. (2d) 131, 120 P. (2d) 858.

As observed from our decisions, the test to be employed in ascertaining the existence of the partnership relation is the intention of the parties to be partners. Intention, in turn, is found in their express agreements, statements, and conduct.

In reference to the parties' statements and conduct, the evidence showed the following: On cross-examination, respondent was asked: "Prior to the time that you signed that contract, did you at any time attempt to get Tony [appellant] to go into a partnership?" He replied: "I thought that when we signed the contract we were partners. That is what I figured." Again, respondent stated that while he never referred to appellant as his partner, yet "he [appellant] told everybody, anybody who called to advertise the place he would tell them, 'you go over to my partner [respondent]. I can't do anything for you right now.'" Moreover, respondent declared that, about four months before the contract was made, he and appellant had discussed going into business together.

In addition to these statements, the evidence also disclosed that respondent managed the kitchen, kept the time of and paid the help, counted the money each day, purchased some of the supplies, discussed the problems of the restaurant with appellant, and signed

the checks. Appellant, on the other hand, purchased most of the supplies, occasionally worked in the restaurant, and attempted to promote the business. Moreover, a representative of the accounting firm that kept the books of the restaurant testified:

"Q. In setting up these books, were they kept as a corporation or as a partnership? A. They were set up under the law as a corporation, but kept as a partnership."

With regard to the written agreement, on first reading, the terms "stock," "California Oyster House, Inc.," and "corporation" might cause difficulty. Yet it must be remembered that the relationship of the parties is not controlled by the name of the arrangement or by certain terms and labels. On the contrary, it is the substance derived from all the circumstances which determines their legal relations toward each other. *Styers v. Stirrat & Goetz Inv. Co.*, 65 Wash. 676, 118 Pac. 896.

A close analysis of the instrument, together with the surrounding circumstances, will disclose that the corporation factor is immaterial so far as determining if a contract of partnership existed. But even if it were considered, the existence of such a business association would not militate against the existence of a partnership as between the parties. It is quite obvious that a partnership may have as its assets the majority stock of a corporation without a resultant change in either type of business association. In the case at bar, however, respondent at no time received a share of stock.

We are convinced, therefore, that respondent and appellant intended to and actually did form a partnership to conduct a restaurant business. All of the elements of a partnership were present. They agreed to conduct a legitimate business for profit and to divide the profits of that business. True, there is

nothing to show that they agreed to divide the losses. However the rule is that, if two parties agree to engage in a joint undertaking in which there is an agreement to share profits, the law will presume that they agreed to share losses also. *Dow v. Dempsey,* 21 Wash. 86, 57 Pac. 355; *Lung v. Cram,* 136 Wash. 397, 240 Pac. 1; *Freitag v. Lund,* 173 Wash. 589, 24 P. (2d) 60.

The further question naturally arises as to whether we should consider the evidence in this case relative to the intent of the parties in view of the rule that written instruments cannot be varied or contradicted by parol testimony.

There are two reasons why the testimony may be considered. First, it appears that the contract, as it relates to the business and the ultimate object to be obtained, is somewhat ambiguous. In speaking of a contract similar to the one under consideration, this court had occasion to hold:

"Ordinarily a written instrument, if its language be clear and free from ambiguity, cannot be varied or contradicted by evidence of what was said or done prior to the time of its execution. But where the language employed is ambiguous or leaves it indefinite and uncertain as to what the parties intended, it is permissible to show the conditions existing at the time and the circumstances surrounding the transaction, and the words and conduct of the parties at that time in so far as they tend to explain the language of the written instrument; and where, as in this case, an accounting and equitable relief are sought by one who was a party to the written agreement and who asserts that the same was intended to be, and was, a partnership agreement, it is permissible for the court to receive evidence as to how the parties themselves have construed the written contract—as to whether the one disputing the alleged partnership has heretofore treated it as a partnership agreement." *Causten v. Barnette,* 49 Wash. 659, 96 Pac. 225.

■ Second, the evidence respecting the intent of the parties and the conduct of the business was introduced without objection from either side.

In the following cases this court has had occasion to construe written contracts of the same nature as the one involved in this litigation. *Causten v. Barnette, supra; Styers v. Stirrat & Goetz Inv. Co., supra; Lung v. Cram,* 136 Wash. 397, 240 Pac. 1; *Prentiss v. Mathews,* 147 Wash. 74, 264 Pac. 1008. In each of those cases we took into consideration the contents of the contracts as well as the actions and statements of the parties concerned. In so doing, we ascertained the intention of the parties and concluded that, looking to the ultimate object to be accomplished, the parties were engaged in business as partners. We have so considered this case.

■ Respondent was a partner of appellant and as such was unable to maintain the present action for the reason that, until an accounting and settlement of the partnership affairs is had, there is no cause of action between partners arising out of the partnership transactions except an equitable action for an accounting. *Kwapil v. Bell Tower Co.,* 55 Wash. 583, 104 Pac. 824; *Potter v. Scheffsky,* 139 Wash. 238, 246 Pac. 576; *Pollock v. Ralston,* 5 Wn. (2d) 36, 104 P. (2d) 934.

For the reasons stated, the judgment is reversed.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.