CECIL P. ST. AUBIN, *Respondent,* v. RUSSELL W.
LARSON *et al., Appellants.*[1]

J. P. Tonkoff, for appellants.

G. E. Clark, for respondent.

BLAKE, J.—The defendants are operators of pinball machines. At the time this controversy arose, they had between fifty and sixty machines in operation in various towns in the Yakima valley.   The plaintiff is an electrician and operates a business in the city of Yakima under the trade name of "Valley Electric."

Plaintiff's principal activity is the servicing of pinball machines. From the time he opened shop (about March 1, 1944), under the name of Valley Electric, until some time after this controversy arose, he was regularly engaged in servicing pinball machines belonging to the defendants. Until about August 1st, defendants paid him for such services upon the presentation of statements. When plaintiff presented a bill covering services rendered in July, 1944, however, the defendants refused to pay it. Likewise, they refused to pay a bill rendered for services in August. Since then, plaintiff has performed services on defendants' machines on a cash basis.

Plaintiff brought this action to recover $632.57—the aggregate of the bills rendered for July and August. Defendants do not deny that this amount reflects a correct

[1]Reported in 161 P. (2d) 333.

charge for the services rendered. They allege, however, by way of cross-complaint, that the partnership (Larson Brothers) is a partner in the business of Valley Electric. By way of cross-complaint, they allege, in substance, that their share of the profits made by Valley Electric is more than sufficient to offset plaintiff's claim, and demand an accounting.

The cause went to trial on the issue presented by the cross-complaint: whether the business of Valley Electric was a partnership in which Larson Brothers owned a half interest. The only testimony offered on the issue was that of the interested parties—Cecil P. St. Aubin, Russell W. Larson, and Lilmer I. Larson. Upon consideration of the evidence, the court found:

"That the plaintiff and the defendants Russell W. Larson and Lilmer I. Larson did not enter into any partnership agreement for the operation of plaintiff's business."

A judgment was accordingly entered in favor of plaintiff, from which the defendants appeal.

Whether a partnership existed, we think, must be determined from the testimony of the plaintiff and Russell Larson, for it was he who, on behalf of appellants, negotiated whatever agreement was made in connection with the subject of controversy. As we view it, Lilmer Larson's testimony, standing alone, would not establish a partnership in the business of Valley Electric. He testified:

"Q. Did you talk to him after that about this partnership deal? A. Well, I can't recall. Russ and Cecil were doing most of the talking about that. I left it up to them. They had been in business before, and whatever Russ did pertaining to that was O. K. with me."

Russell Larson testified that, prior to March 1st, when St. Aubin was contemplating starting in business, he made an agreement with him under which the Larson Brothers partnership was to furnish certain equipment for the repair of pinball machines; that the partnership was to employ him to repair its own machines and assist him in getting the repair work of other operators; that St. Aubin should have a drawing account of fifty dollars a week, and

that profits above that should be divided equally between St. Aubin and Larson Brothers. Russell Larson further testified that he had made demands on St. Aubin for an accounting of the business done by Valley Electric, and that St. Aubin finally furnished a trial balance covering the period from March 1 to July 31, 1944.

Mr. St. Aubin admits that the matter of a partnership was discussed by himself and Russell Larson, but asserts that it was never consummated. He admits that he drew fifty dollars a week, but says, in substance, that that was merely a bookkeeping charge against the business for his services as proprietor. He admits that several demands were made upon him for the examination of his books, but that he furnished the trial balance only because he thought it was an easy condition to meet in order to get his July bill paid.

Although Russell Larson does not claim there was a specific agreement to share losses, it would seem that the evidence we have summarized would be sufficient to sustain a finding of fact that Larson Brothers had a partnership interest in Valley Electric. *Dow v. Dempsey,* 21 Wash. 86, 57 Pac. 355; *Stipcich v. Marinovich,* 13 Wn. (2d) 155, 124 P. (2d) 215.

However, on cross-examination, Russell Larson admitted that, in June, in an action for divorce brought by his wife, he made a deposition containing the following assertions:

"Q. Now, Mr. Larson, did you not state under oath on June 13, 1944, in a deposition taken before Don M. Tunstall, Notary Public, at Yakima, Washington, as follows? Question to you: 'How much does St. Aubin owe you? A. Nothing. Q. You own an interest in his business, do you not? A. No. Q. None at all? A. None at all. Q. You financed him, did you not? A. No. Q. You didn't? A. Not a bit. Q. Where did he get the money from, do you know? If you know, where did he get his money to start up his business? A. He started it up with what he had himself. He had been working before. Q. You maintain your repair shop at the same place as his? A. No. Q. Where is your repair shop? A. At 108 South Seventh Avenue, and I had part of it in 3402 Jefferson, did some work there. I don't really have a repair shop. Q. That

is near the fire station? A. Yes, it's across the street from the fire station. Q. In the corner house? A. No, it's a couple doors up there. I guess there's one house—I think the corner is vacant. There's one house, the brown house, there.' I ask you if you did not so testify under oath on June 13, 1944. A. Yes. Q. I will ask you, Mr. Larson, if you did not so testify under oath in the trial of the case of Larson v. Larson, No. 7288, in the Superior Court of the State of Washington in and for Yakima County, tried June 27, 1944, as follows: 'Q. Didn't you advance money to St. Aubin? A. No. Q. Didn't you tell your wife you were backing St. Aubin and that you were keeping it a secret because St. Aubin was serving your competitors? A. No.' A. Did you ask me the question yet? Q. I ask you if you did not so testify under oath on June 27, 1944. A. Yes."

The trial court, in summing up, said:

"Gentlemen, here is a rather peculiar situation. Each party has made admissions that would benefit the other party. . . . I think, here, either he [Larson] had an interest in that business or he perjured himself. . . . Well, it is before me as to the weight of the evidence. It is easier to explain that instrument [the trial balance] because he [St. Aubin] was anxious to get a settlement, than it is to explain that evidence. . . . Here is what happened: Those people got together and they talked of the possibility of a partnership, and they never came to terms. I am convinced of that. They never did get down to terms, whether it was oral or otherwise, and I am convinced from this evidence (referring to deposition) that he told the truth, that he never had any interest in that business. Now, as far as to binding the other party, it is only because it is a part of the evidence. It is easier to explain that instrument [the trial balance], because this man (St. Aubin) wanted his money, and he felt that, if he could sacrifice whatever that would amount to and get it, he would be better off. I will have to find that there is no partnership."

We are in complete accord with the trial court's analysis of the evidence and the conclusion reached.

Judgment affirmed.

BEALS, C. J., ROBINSON, and GRADY, JJ., concur.

MALLERY, J. (dissenting)—If no partnership existed between the parties, then their relations were most unusual. Respondent had possession of, and used without compensation, the truck, tools, and pinball machine parts of appellants. No accounting was made as to them, though a substantial value appears to be involved.

Russell Larson's testimony is obviously unworthy of any credibility for the reasons set out in the majority opinion. In such a case it should be disregarded, except in so far as it is corroborated by other credible evidence. If it be simply disregarded and the direct opposite of his testimony be not assumed on account of his former testimony, I think there is other evidence in the case sufficient to establish the existence of a partnership.