[Decided January 28, 1888.]

## UNITED STATES *v.* GEORGE O. KELLY AND ANDREW C. SMITH, EXECUTORS OF E. S. SMITH, DECEASED, AND M. F. HATCH.

1. TIMBER ACT OF JUNE 3, 1878—PURCHASER—PUBLIC LANDS.—An applicant to purchase timber land under the act of congress has no right to enter thereon and cut or remove timber from the land for the purpose of sale as logs, or to engage in the manufacture thereof into lumber for commercial purposes, prior to his proof and payment therefor.

2. SAME—SAME.—No entry of any kind, and no cutting of any timber for any purpose, is necessary to perfecting title under said act, or permissible for any purpose whatever.

3. TRESPASS—LACHES BY GOVERNMENT OFFICERS—ESTOPPEL.—The fact that government officers had knowledge that applicants to purchase public lands, under the timber act, were unlawfully cutting timber upon the land before proof and purchase, and did not interfere to prevent it, does not make such trespass lawful, nor does it estop the government from claiming its own, and the subsequent issue of a patent to the applicant cannot change the title to the timber severed from the soil by his own act, while the government had the title and payment had not been made.

4. PUBLIC LANDS—TRESPASS—DAMAGES—MEASURE OF.—In an action by the United States to recover the value of lumber manufactured out of logs unlawfully cut on public lands of the United States, by willful trespassers, who sold the logs to defendant, and the defendant innocently purchased the logs without knowledge or notice of this trespass, and manufactured the same into lumber: *Held*, that the measure of damage was the value of the property at the time of the purchase, and not the value of the lumber manufactured out of said logs by such innocent purchaser.

5. SAME—NONSUIT—FAILURE OF PROOF.—When in the trial of such an action sole reference was had to the question of liability of innocent purchasers for the value of manufactured lumber, under the circumstances above stated, and it being conceded in the argument by the plaintiff that if such

liability did not exist the judgment of nonsuit in the lower court should be affirmed, and there being no evidence from which the value of the *logs*, at the time of the purchase, could be ascertained, and there being no claim by plaintiff for nominal damage: *Held*, that judgment of non-suit against plaintiff was properly granted.

6. CONVERSION—PERSONAL PROPERTY—ACCESSION.—Where no element of will-fulness or intentional wrong appears on the part of him who applies another's material, and the identity of these materials has finally disap-peared in the new product, or where it is shown that his own labor and materials contributed more to the value of the present chattel than those materials which he took without intentional wrong, he is entitled to keep the chattels as his own, making, however, due compensation to the owner of the materials for what he took. Per TURNER, J.

ERROR to the District Court holding terms at Tacoma. Second District.

The opinion of the court states all the material facts.

*Mr. W. H. White, U. S. Attorney*, for the Plaintiff in Error.

The question in this case is: Does the purchase of the land trespassed upon and the issue of patent therefor bar an action for the value of timber cut upon said land after application to purchase was made under the act of June 3, 1878, and before the purchase was consummated by making proof and paying the purchase price and obtaining receipt therefor? It is contended on behalf of appellant that the application of Shettlero to purchase the lot 2, under the provisions of the act of June 3, 1878, conferred no right upon him to cut timber on said land for any purpose what-ever. Neither entry, settlement, nor cultivation was neces-sary to enable him to perfect his title. Until he had made his proofs and paid for the land, the said land remained public lands of the United States. The United States held both the legal and equitable title. (See act of June 3, 1878, 20 U. S. Stats. 89.) Section 4 of said act specifies who may cut timber on the public lands and for what purpose the same may be cut. This case does not fall within any of the cases specified in said section. Shettlero was not *a miner or agriculturist, clearing his land in the ordinary working of his mining claim, or preparing his farm for tillage. He was not taking the timber to support his improvements, nor was he*

*taking the timber for the use of the United States.* Any cutting or removing timber from the public lands otherwise than this is a trespass for which the party guilty is liable civilly and criminally. (*U. S.* v. *Smith,* 11 Fed Rep. 487.) It is not pretended that the timber from which the lumber was manufactured was cut for any purpose but for sale. Under such circumstances, when cut, it became the property of the United States absolutely. The cutting was waste, and the owner of the fee may seize the timber cut, arrest it by replevin, or proceed in trover for its conversion. (*U. S.* v. *Cook,* 19 Wall. 591; *Schulenberg* v. *Harriman,* 21 Wall. 44; *Nelson* v. *Graff,* 12 Fed. Rep. 389.) The United States has the right to follow the timber in its changed form as manufactured lumber, and recover the full value of the manufactured lumber, the sawlogs having been bought with full knowledge of the fact that they were cut on public land. (*Wooden Ware Co* v. *U. S.,* 106 U. S. 432; *Nelson* v. *Graff,* 12 Fed. Rep. 389.) The timber having been cut wrongfully, and having thereby become the property of the United States absolutely, from the moment of severance, and as personal property, it did not pass by a subsequent conveyance of the land. (*Ladda* v. *Hawley,* 57 Cal. 51; *Wincher* v. *Shewsbury,* 2 Scam., 35 Am. Dec. 108; *Keeton* v. *Audsley,* 19 Mo. 362, 61 Am. Dec. 560.)

*Messrs. Judson & Sharpstein,* for the Defendant in Error.

Counsel argued that payment for land purchased under the timber act of 1878 estops the United States from maintaining an action for the value of the timber cut upon the land by the purchaser prior to the issuance of the patent. If such action has been instituted, and if before trial and judgment the patent issues, such issuance of patent operates as a bar to a recovery. If the issuance of a patent relieves the purchaser, who was the original trespasser, from *liability* for cutting and removing the timber when the land belonged to the government, it ought to prevent the United States from maintaining an action against his vendees for converting it to their use. Such vendees are entitled to stand in

the shoes of the patentee. (*United States* v. *Ball*, per DEADY, J., 31 Fed. Rep. 667 et seq.)

Mr. Chief Justice JONES delivered the opinion of the court.

The appellant commenced this action to recover the sum of $18,225, the value of certain lumber manufactured by Smith & Hatch from certain sawlogs cut by Shettlero & Gimel, on lot 2 of section 24, township 20 north, range 1 west, in Pierce county, Washington Territory.

It is alleged that said lot 2 was, at the time of said cutting, public land of the United States, and that Smith & Hatch, who were operating a sawmill at Tacoma, bought said sawlogs, knowing the same to have been cut on public lands.

The value of the standing trees (of the sawlogs on the ground where cut), of said logs at the mill of Smith & Hatch, and of the manufactured lumber, is alleged in detail.

Defendants joined issue, denying knowledge or information as to cutting and removal of the logs in question, and denying the receipt by Smith & Hatch with knowledge or at all, and denying value alleged.

Plaintiff introduced evidence showing that in April, 1885, Shettlero & Gimel cut upon said lot 2, and removed therefrom and sold to Smith & Hatch, at Tacoma, from 70,000 to 121,500 feet of sawlogs.

That Smith & Hatch admitted having bought about 90,000 feet of sawlogs, cut on said lot 2, and having manufactured the same into lumber at their mill.

Evidence was also introduced to show the value of the logs and lumber as alleged.

The evidence also shows that in March, 1885, before the cutting of said timber, Shettlero filed his application to purchase said lot 2 as timber land, under the act of congress of June 3, 1878.

That on May 23, 1885, after said cutting, he made proof according to law, paid for said land, received his receipt therefor from the land office at Olympia, and in 1887 received patent from the United States for said land, said patent being dated April 28, 1887.

Plaintiff rested, and defendant moved for judgment of nonsuit, which was granted. Motion for new trial was made and denied, and judgment entered dismissing the cause.

Exceptions were duly taken and noted to the various rulings of the court, and appeal taken by the United States.

It seems quite manifest to us that the case was tried by both parties with sole reference to the question as to whether the plaintiff was entitled to recover the value of the *lumber manufactured* from the logs, although the value of the standing trees and of the logs into which they were cut and sold is alleged and proved, as well as the value of the lumber.

Indeed, appellant, in his brief, claims the suit to be for the manufactured lumber, and it is not here intimated, and quite clearly was not in the trial court, that any other than a judgment for the value of the manufactured lumber was the relief to which plaintiff is entitled.

It is not disputed but that in March, 1885, one Shettlero filed his application at the proper local land office for the purchase of the timber land from which the logs were in fact cut during the next month and sold to Smith & Hatch, and that Shettlero did not make proof or pay for the land until May 23, 1885.

This action was commenced in February, 1885, and the patent for the land issued to Shettlero in April, 1887.

There can be no right in an applicant to purchase timber land under the act of congress to enter thereon, and cut and remove timber from the land for the purpose of sale as logs, or the manufacture thereof into lumber for commercial purposes, prior to his proof and payment therefor.

No entry of any kind, and no cutting of timber for any purpose, is necessary to perfecting title, or permissible for any purpose whatever.

The act of June 15, 1880 (supplement to Revised Statutes, chapter 227), at least negatively disallows such a claim of any right to cut the timber prior to proof and payment of the purchase price.

The public land, so far as the sale of timber lands is concerned, might be entirely denuded of all valuable timber thereon, without payment therefor, if at once, upon filing the application for entry, the applicant might proceed to cut, remove, and sell the trees growing thereon before paying for the land.

The fact that agents of the government knew that such unlawful acts were being committed, and did not interfere to prevent them, would not make such trespass lawful, or estop the government from claiming its own.

The subsequent issue of a patent to the applicant could not change the title to the logs severed from the soil by his own act, while the government had the title, and payment had not been made.

In this case, it stands confessed that these logs were cut, removed, and sold for the purpose of being manufactured into lumber, before payment for the land, and under such circumstances the logs were the absolute property of the government.

In this case, the appellees were innocent purchasers of the logs cut from the land; they manufactured the logs into lumber without notice, and this action is brought to recover the value of the lumber.

It is conceded in the argument that if such claim cannot be maintained, the nonsuit in the trial court must be affirmed.

It appears also that the trial below took place with reference to that question, and the nonsuit was granted with that sole question in view.

The Supreme Court of the United States determined that where the purchaser is without notice of the wrong on the part of his vendor, who is a willful trespasser, the measure of damages is the value of the property at the time of the purchase. (*Wooden Ware Co.* v. *U. S.*, 106 U. S. 432.)

There is no evidence here from which the value at that time can be ascertained, and if there were, under the circumstances of the trial below as stated, and the point not being raised here, that judgment might have been for such

sum as the property was worth at the time and place of the purchase, or even for nominal damages. The judgment appealed from is correct as a judgment of nonsuit merely, as it is admitted to be. The plaintiff might perhaps have claimed a judgment for nominal damages against some of the defendants, but none of the parties here make any such claim or raise the point.

I am satisfied to pass by the question as to whether a willful trespasser upon the public lands who cuts and removes timber therefrom and manufactures it into lumber, he is or is not liable for the value of the timber, if it can be identified as the same manufactured from the timber so cut.

That question is not necessarily involved here, in my judgment.

Let judgment be entered for a nonsuit without prejudice, with costs of both courts against the appellant.

Mr. Justice LANGFORD concurred specially, as follows:

I concur in the decision of the other members of the court as to their conclusions, and that the trial and verdict, if had, would have been for lumber which those defendants did not convert, and not for logs. But there are other reasons for arriving at the same conclusion, which I will mention.

The complaint joins four defendants. It alleges facts against two of them which would entitle the plaintiff to recover in trespass or trover: Trespass for entering upon the plaintiff's land and cutting timber therefrom, or trover for converting the logs after they were cut, by making a sale thereof; all of which was willful wrong. These two defendants were never served or impleaded.

The action, by the title against the four, proceeded against two of them, who were served and impleaded; and the evidence shows that the latter two defendants were innocent purchasers from the first two willful trespassers, and that the said innocent purchasers converted the logs by sawing them into lumber.

The complaint alleges that the four defendants jointly

committed the trespass, the first conversion and the second conversion of the logs, and finally the conversion of the lumber; and prays judgment for all of said wrongs as joint wrongs of the whole four defendants.

Now, the two defendants against whom the verdict could have been rendered, if any were rendered, did not participate in the willful trespass or conversion. This willful trespass and conversion was complete and finished before the two defendants, who were innocent purchasers, had the logs or converted them.

A judgment upon the complaint would be conclusive that the innocent purchasers joined in the wrongful trespass of the other two, when in truth they did not so join, nor did they participate therein in any way.

Such a judgment being against joint wrong-doers, the innocent purchasers would be estopped thereby from recovering from their vendors for the failure of title, upon account of the rule that joint wrong-doers cannot enforce contribution. Such a judgment ought not to have been entered upon this complaint.

If the plaintiff wished to recover from these two innocent purchasers, he should have amended his complaint so that it would not charge them as joint wrong-doers in the first trespass and conversion; in fact, he must have dismissed the complaint as to the willful trespassers, so that the action would have been against them, the innocent purchasers only, for what they did. It could have charged those served with the entire value of the logs, which they entirely converted, after the complete conversion had been made by the other two defendants.

The two different conversions were two separate wrongs, each committed by different parties, and no joint judgment against all could be entered, nor a judgment against either party, as of a joint wrong of the four.

The first willful trespass and conversion was committed by the defendants not served or tried. They cut the trees and sold the logs. Had the action been against them, and had it been for trespass, the measure of damages would have

been the diminished value of the land, with, perhaps, exemplary damages. If they proved that the value of the land had not been diminished, by proving that they paid the highest price for the land that plaintiff could have received if no trespass had been committed, then, perhaps, nominal damages only would have been recoverable.

Perhaps the rule that a pleading must be construed most unfavorably to the pleader would have permitted those defendants to claim that the action was trespass, and claim this defense.

However this may be, it is not in this case, and is not decided.

Could the United States waive the trespass and sue in trover?

Could it recover the price of the land, its value before the trespass, and afterwards elect to pursue the logs, which were the fruit of that trespass, and by changing the form of action, recover satisfaction for the trespass, and yet recover the result thereof?

I have much doubt as to this right upon the part of the government; and the United States District Court of Oregon, and the District Court in this case, were of opinion that the purchase of the land by the trespassers at its highest value before the trespass, and the United States accepting that value, operates as a complete release for the wrong. I will not now decide that those courts were wrong in this.

Mr. Justice TURNER concurred specially, as follows:

The appellant brought suit in the court below for the conversion of a quantity of lumber valued at $18,225.

We are all agreed that this is the true construction of the complaint. In order to sustain this complaint it offered proof to the effect that certain persons had cut and removed from lands of the United States a quantity of sawlogs, and that said sawlogs were afterwards sold to the appellees, and were by them manufactured into lumber at their sawmill. It was admitted on the trial that the appellees bought the sawlogs and manufactured them into

lumber without knowledge of the title thereto of the United States, or of the trespass committed by the vendors of the appellees in their procurement.

Upon these facts, the direction of the court below to the jury to find for the appellees was clearly correct.

The appellant had sued for the conversion of property that did not belong to it. It owned the logs which came into the possession of the appellees. It did not own the lumber into which they were cut. The latter, under the doctrine of accession, becomes the property of the appellees. This doctrine is stated by a well known writer on the law of personal property thus:

"Where no element of willfulness or intentional wrong appears on the part of him who applies another's materials, and the identity of those materials has finally disappeared in the new product, or where it can be shown that his own labor and materials contributed more to the value of the present chattel than those materials which he took without intentional wrong, he shall keep the chattels as his own; making, however, due compensation to the owner of the materials for what he took." (Schouler on Personal Property, vol. 2, p. 37.)

The doctrine here stated is abundantly sustained by adjudged cases, and by standard text writers. (Blackstone's Commentaries, vol. 2, p. 404; American and English Encyclopedia of Law, vol. 1, title "Accession"; *Silsbury* v. *McCoon*, 3 N. Y. 378, 53 Am. Dec. 307; *Wetherbee* v. *Green*, 22 Mich. 311, 7 Am. Rep. 653; *Cross* v. *Marston*, 17 Vt. 533, 44 Am. Dec. 353; *Lampton's Exrs.* v. *Preston's Exrs.*, 1 J. J. Marsh. (Ky.) 454, 19 Am. Dec. 111; *Pierce* v. *Goddard*, 22 Pick. 559, 33 Am. Dec. 764.)

The title to the lumber, for the conversion of which the suit was brought in this case, was, in my opinion, fully vested in the appellees upon both of the grounds stated by Schouler.

First, the identity of the logs had disappeared in the new product; second, the labor bestowed upon the logs by the appellees, from which the new product resulted, contributed more to the value of the product than the logs did.

The appellant, in its complaint, alleges the value of the logs to have been six dollars per thousand feet, board measure, at the mill.    It alleges the value of the lumber to have been fifteen dollars per thousand, board measure, at the mill. As a matter of fact, the disparity in value was much greater.

There is nothing in the case of *Wooden Ware Co.* v. *The United States,* 106 U. S. 432, which militates against the application of the doctrine of accession to cases such as this one.    The only thing determined in that case was the proper rule of damages for the conversion of personal property which confessedly belonged to the United States.

I think the judgment of the court below must be affirmed.