[No. 13620.   Department One.   May 1, 1917.]

SAMUEL WYLDE *et al., Appellants,* v. CHARLES SCHOENING
*et al., Respondents.*[1]

TROVER AND CONVERSION—PROMISSORY NOTE—ASSIGNMENT BY TRUS-
TEE—EVIDENCE—SUFFICIENCY.  Where the last of six mortgage notes
was held by the mortgagee as trustee for plaintiffs, to whom it had
been assigned, the mortgagee was guilty of an actual, not merely a
technical, conversion of the note, where he assigned and pledged all
of the notes as collateral security for a personal loan from a bank,
which took without notice and held the last note with the others as
security; and the evidence is 'sufficient to establish the conversion,
where the mortgagee admitted that the note had been assigned with-
out the consent of the *cestui que trust,* his agent clearly intended to
include it in the pledge, and he executed a written assignment which
expressly described all the notes.

SAME — CONVERSION OF MORTGAGE NOTE — MEASURE OF DAMAGES.
Upon the conversion of a mortgage note which was subject and in-
ferior to five other notes secured by the same mortgage, and upon
which no deficiency judgment could be obtained, the measure of
damages is not the face of the note and interest, but the value of
the security as of the date of the conversion, less the amount of the
other five notes and accrued interest.

Appeal from a judgment of the superior court for King
county, Jurey, J., entered March 14, 1916, in favor of the
defendants, in an action for conversion, tried to the court.
Reversed.

*Andrew J. Balliet,* for appellants.

*E. H. Guie,* for respondents.

ELLIS, C. J.—This is an action for conversion of a non-
negotiable promissory note.  On May 14, 1910, defendants
were the owners of a certain eighty acres of land in King
county, and on or about that date sold the same to plaintiffs
and a number of other persons.  The purchase price was
$26,000, of which the sum of $2,000 was paid in cash.  The
balance, evidenced by six nonnegotiable promissory notes for

[1]Reported in 164 Pac. 752.

$4,000 each, was secured by a purchase money mortgage on the property. The mortgage contained provisions as follows:

"The mortgagors (mortgagees) herein, are limited solely to the above described property for the payment and satisfaction of the above named notes, hereby secured, and in case of foreclosure, no deficiency judgment shall be entered against the mortgagors herein, jointly or severally.

"The mortgagors intend platting the land herein described in quarter acre tracts approximately, which will consist of about three hundred twenty-two (322) quarter acre tracts. The mortgagees agree to release any of such quarter acre tracts upon being paid one hundred dollars ($100) per tract. Such release or releases, however, shall not impair the validity of this mortgage as to the balance of the land described in said mortgage."

Plaintiff Samuel Wylde, having been instrumental in negotiating the sale of the property, defendants, as a commission for his services, indorsed to plaintiffs the sixth or last of the promissory notes, defendants retaining possession of that note under the following written agreement:

"Know all men by these presents, That whereas, Charles Schoening and Minnie Schoening, his wife, have endorsed over to Samuel Wylde and Ellen J. Wylde, his wife, promissory note No. 6, for the principal sum of four thousand dollars ($4,000), dated at Seattle, Washington May ——, 1910, due on or before three years from date, payable to the order of said Charles Schoening and Minnie Schoening, his wife, with interest at seven per cent (7%) per annum, payable semi-annually; said note is endorsed without recourse. Said note is also secured by mortgage on the following described real estate, to wit: The north half of the northwest quarter of section thirty (30), township twenty-three north, range four (4) East, W. M., containing eighty (80) acres, situated in the county of King and state of Washington.

"It is agreed between said Charles Schoening and Minnie Schoening, his wife, and said Samuel Wylde and Ellen J. Wylde, his wife, that said note shall be held by said Charles Schoening in trust for the benefit of said Samuel Wylde and Ellen J. Wylde, his wife, with the express understanding and agreement that the payments of said note and interest there-

on are subject to the prior payment of the principal and interest of five (5) other notes of like tenor and effect, for four thousand dollars ($4,000).

"And the said note so endorsed over to the said Samuel Wylde and wife, is not to be collected or suit brought for the foreclosure of the same until the said five notes of four thousand dollars ($4,000) each with interest, as aforesaid, shall first be paid to said Charles Schoening and Minnie Schoening, his wife, or their order.

"The said Charles Schoening and Minnie Schoening, his wife, agree that if the interest is paid on all of said notes, including the said $4,000 note, so held in trust by said Charles Schoening, that he will immediately remit to the said Samuel Wylde and Ellen J. Wylde, his wife, or their order, any interest that may be collected by him, without cost or charge. That when said five notes of Charles Schoening shall have been fully paid and satisfied, he, the said Charles Schoening, will turn over to the said Samuel Wylde the said notes or the proceeds of the same if they shall have been paid to the said Schoening.

"In the event said mortgage is foreclosed and said note of $4,000 shall be included in such foreclosure suit, the said Samuel Wylde and Ellen Wylde, his wife, shall bear their proportionate share of the cost of such foreclosure suit, but it is optional with the said Charles Schoening as to whether or not he will include the said note in any foreclosure proceedings should such suit be brought to foreclose."

"Executed in duplicate this —— day of May, 1910.

> "Samuel Wylde,
> "Ellen Wylde,
> "C. Schoening,
> "Minnie Schoening."

Soon after May 14, 1910, the land was platted into 320 quarter acre tracts, in accordance with the terms of the mortgage, for the purpose of resale. Whenever one of the tracts was sold it was released from the mortgage lien upon the payment to defendants of $100, which amount was credited upon the notes. In December, 1912, defendants, for their personal use and benefit, borrowed, through one Fred E. Sander, as agent, $7,000 from the Peoples' Savings Bank, of Seattle.

As collateral security for this loan, on December 28, 1912, they executed and delivered to the bank in writing an absolute assignment of the $24,000 mortgage and the six notes. The assignment included the note for $4,000 which defendants held in trust for plaintiffs. It is this act which is relied upon as a conversion. In January, 1915, one hundred and sixty of the quarter acre tracts were sold to certain persons, as the court found, "for the purpose of facilitating the sale of the land." It appears that, prior to that time, plaintiffs had parted with their interest in the land. No money was paid on this sale, but a note for $16,000, secured by a mortgage covering these tracts, was given by the purchasers to defendants. This mortgage was pledged to the bank as collateral security for defendants' loan in the same manner as the $24,000 mortgage, and on May 5, 1915, the bank released from the lien of the original $24,000 mortgage the one hundred and sixty quarter acre tracts covered by the $16,000 mortgage. On learning these facts, plaintiffs demanded that the $16,000 be credited on the $24,000 mortgage. This was refused. Thereafter the indebtedness of defendants to the bank, which had been reduced to about $4,000, was taken over by the Seattle Land & Improvement Company, a corporation, of which Sander is president, and the $24,000 mortgage and notes, including that of plaintiffs, and also the $16,000 mortgage were assigned to it by the bank. After this latter assignment, Sander indorsed on the $16,000 note a memorandum to the effect that the amount named in that note would not be credited on the original $24,000 notes and mortgage until actually paid in money.

The trial court found most of the facts substantially as above stated, and specifically,

"That sometime after the said agreement had been entered into, said Charles Schoening, by and through an agent, obtained a loan of $7,000 from the Peoples Savings Bank, of Seattle, and said agent, against the instructions of said Charles Schoening, included the note of plaintiffs so held in

trust by defendant Charles Schoening with the other of said five notes as collateral security for the said seven thousand dollar loan; that prior to the commencement of this action the said note of plaintiffs was released from the assignment to said bank as collateral security, as aforesaid, and returned to the control of the defendant as such trustee under the terms of said trust agreement, and the said note of plaintiffs is now held by the said Charles Schoening as trustee for plaintiffs and under the terms and conditions of said trust agreement.

"That after the said 14th day of May, 1910, the said land hereinbefore described, was platted into 320 quarter acre tracts, streets and alleys for the purpose of selling the land so platted; that in order to facilitate the sale of said land, the said Peoples' Savings Bank did release 160 of the said quarter acre tracts, and the said 160 quarter acre tracts were immediately remortgaged for $16,000, payable to the order of said Charles Schoening; that the said mortgage for $16,000 still retains its lien as a first mortgage subject to all the rights of the plaintiffs in and to the said four thousand dollar note, according to the terms and conditions of said trust agreement, and that the plaintiffs' title in and to said note has not been impaired in any extent whatsoever, but the said trust agreement remains in full force, virtue, and effect between the plaintiffs and defendants, and that any money that may be paid or received on said sixteen thousand dollar note and mortgage shall at the same time be credited on the twenty-four thousand dollar note and mortgage, and in any foreclosure of said $16,000 mortgage and sale of the property in foreclosure the amount received or paid on such foreclosure sale of the said $16,000 mortgage shall be credited on the said $24,000 mortgage and the said promissory note, in accordance with the terms of said trust agreement."

The court further found that there was a "technical conversion" of the note to plaintiffs' damage in the sum of one dollar.

On appropriate conclusions of law, the court "ordered, adjudged and decreed," in substance, that defendant Charles Schoening now has in his possession and under his control the note in question; that he holds it in trust for plaintiffs under the terms of the trust agreement; that plaintiffs' interest in

the $24,000 mortgage is continued and exists in the $16,000 note and mortgage, subject to the terms of the trust agreement; that any money that may be paid for releases of any tracts of land from the lien of the $16,000 mortgage, or any money received by foreclosure of that mortgage, should be credited and applied on the $24,000 mortgage, and the indebtedness secured thereby in accordance with the terms of the trust agreement. Plaintiffs were awarded judgment for one dollar, and for their costs. They appeal.

Appellants contend that the court erred in finding that there was only a technical conversion of their note. The assignment to the bank, which is in evidence, is an absolute assignment of all six of the original purchase money notes and of the mortgage securing the same. It is an admitted fact that this assignment was made and the notes and mortgage were delivered to the bank to secure a loan of $7,000 for the sole personal use and benefit of respondents. Though this loan was secured through Sander as respondents' agent, and Sander claims that Schoening told him that one of the notes was held in trust for appellants, there was no evidence whatever that any officer or representative of the bank ever at any time had any knowledge of appellants' interest. The trust agreement was not recorded until May 11, 1915, and it is not claimed that the bank had any knowledge of its existence. Though Charles Schoening testified that he did not know that his agent Sander had hypothecated the sixth note with the bank, the evidence as a whole forces the conviction that he must have known it and at least tacitly consented to it. At first he testified that he took the matter up with A. K. Wylde, a son of the appellants, and that A. K. Wylde consented that the note be pledged with the others. A. K. Wylde flatly denied this, and disavowed any knowledge of the transaction. The evidence is conclusive that the appellants were not consulted, and knew nothing of the transaction till about a year before this action was commenced. Schoening, notwithstanding his first intimation that the note had been pledged with

A. K. Wylde's consent expressed to him personally, afterwards asserted that it was done without his own knowledge or consent. Moreover, he and his wife executed the assignment to the bank which expressly described the six notes. It is not claimed that he could not read nor that he did not read it. Sander was admittedly respondents' agent in securing their loan from the bank. Though he testified that Schoening advised him that appellants had an interest in the notes, he did not testify that Schoening did not know of and consent to its inclusion in the pledge. He testified as follows:

"Q. Did he (Schoening) show you the agreement (trust agreement)? A. No, sir. I didn't see the agreement until the time you put it on record. Q. And still you assigned that (the note) to the bank? A. Why shouldn't I, it wasn't of record two years ago. Q. Is there any other reason than it wasn't of record? A. When you loan money you get what collateral you can. Q. If it had been of record your theory is that it could not have been done? A. Oh, yes it could, because I dealt for Mr. Schoening. Q. I mean if the agreement between Mr. Wylde and Mr. Schoening had been of record the sixth note could not have been assigned? A. Not very well."

It is clear that Sander intended to pledge all of the notes, and the inference is that he found it necessary to do so in order to secure the loan from the bank. Respondents, by executing the assignment, assented to that act, even if they did not expressly consent to it in advance. It seems to us that the court's finding to the effect that the sixth note was pledged without respondents' knowledge or consent is not only unsupported by, but contrary to, the clear preponderance of the evidence. We are clear that the facts as disclosed by the evidence show a conversion of the note—not technical merely, but actual. *Howard v. Seattle Nat. Bank,* 10 Wash. 280, 38 Pac. 1040, 39 Pac. 100.

Even more unfounded in evidence is the finding that the note in question, prior to the commencement of this action, was returned to the control of respondents and is now held

by them as trustees for appellants under the terms and conditions of the trust agreement. It was admitted that the note is held by the Seattle Land & Improvement Company under an absolute assignment from the Peoples' Savings Bank. Sander testified as follows:

"Q. You do not hold an assignment of that mortgage? A. Oh, yes I do. Q. A full assignment? A. Yes, sir. Q. You hold the sixth note? A. No, sir. Q. You hold an assignment of it? A. Sure. I know when the money comes in $4,000 goes to Mr. Wylde. Q. Where is the note? A. Down in my safe. Q. Where is the sixth note? A. In my safe. Q. Didn't you say you didn't have the sixth note? A. No, I never said that. Q. I understood you to say so? A. You didn't so understand me; I never said it. It's in my safe. Q. All of the six notes? A. Yes, sir."

Though Sander thus declares that he recognizes appellants' right to this note, there is no evidence that the investment company, as such, recognizes that right. So far as the record shows, it holds this note through an assignment from the bank and just as the bank held it—as collateral to respondents' debt, just as it holds the other notes. Whatever its attitude may be, it is not a party to this suit and is not bound by the court's findings and judgment. The judgment furnishes no protection to appellants. Furthermore, this is not an action to recover the note, but to recover damages for its conversion. We know of no rule of law which, in such a case, would require the owner to look to the pledgee of a converted note for redress. It is settled law in this state that, where one person wrongfully converts the property of another, the injured party may sue him as a wrongdoer, or, waiving the tort, recover the value of the property as on an implied contract. *Livingstone v. Lovgren,* 27 Wash. 102, 67 Pac. 599; *Cremidas v. Dallas,* 91 Wash. 441, 157 Pac. 1084.

But it does not follow that the measure of recovery is the face of the note and interest from the date of conversion, as appellants claim. That measure only applies where the note is a personal obligation of a solvent maker, or other person

individually liable. *Cremidas v. Dallas, supra.* Here the note was a charge only against the mortgaged premises. No deficiency judgment was recoverable upon it. Even as a charge against the land, it was subject to the other five notes and interest. Obviously the true measure of recovery must be the value of the security as of the date of the conversion, December 28, 1912, less the amount of the other notes and any accrued interest thereon, with interest from that date on the amount so found. Had the trial court found, as we hold he should have found, that the transfer of the notes to the bank was a conversion, he doubtless would have required proof of the value of the converted note so measured. Simple justice to both parties requires that the cause be remanded with direction to the trial court to take evidence of the value of the note as measured by the value of the land as of the date of the conversion, considering also its relation to the other notes, and thereon make a finding of the value and enter judgment in appellants' favor against respondents for that amount with interest and costs.

The judgment is reversed, and the cause remanded for further proceedings in accordance with the views here expressed.

MORRIS, MAIN, and HOLCOMB, JJ., concur.