[No. 26518.   Department One.   May 7, 1937.]

KATIE FREDERICKSEN, *Respondent*, v. SNOHOMISH COUNTY, *Appellant*.[1]

*A. W. Swanson, G. W. Louttit,* and *F. A. Clanton,* for appellant.

*Joseph H. Smith,* for respondent.

MAIN, J.—This action was brought to recover damages for trespass upon real property.   The cause was tried to the court without a jury, and resulted in findings of fact which the court concluded would sustain a recovery.   The damage was found to be seventy-five dollars, and judgment was entered for treble damages, or two hundred twenty-five dollars, from which the defendant county appeals.

The facts are these:   The respondent owns ten acres of land which she occupies as a home with her daughter.   The tract is 660 feet square, and is approximately six miles north of the city of Everett.   Along the east side of the tract, there is a county road thirty feet

[1]Reported in 67 P. (2d) 886.

wide. Some years ago, a stone wall was built on the line between the tract and the road for some distance to the south from the northeast corner of the tract. Inside of this stone wall and north of what is referred to as the gate, which was five or six feet farther in than the stone wall, there had been transplanted and set out one native blue spruce, a mountain ash, and three poplars. These had been transplanted some eleven years before. At the time the stone wall was built, the daughter testified that it was built with reference to the stakes marking the lines of the property at that time.

On or about December 23, 1935, a road crew, working for road district No. 2, in Snohomish county, under direction and authority of the county, entered upon the land of the respondent and, without right or authority or permission of the owner, cut, slashed, and felled wild growth growing upon a strip of land approximately. eight feet wide along the east line of the premises. The crew entered upon the land above the stone wall, above mentioned, and, in addition to the trees which were cut, did the slashing and cutting above mentioned; in addition to this, cutting down the native shrubs on the entire east side of this ten acre tract from the north line thereof to the south. Such slashing and cutting extended back approximately, as stated, eight feet from the property line.

The road on the east side of the property was an unpaved county road, the traveled portion being approximately in the center. The slashing was done on both sides, and was for the purpose, as testified to by the appellant's witnesses, of cutting off the overhang of the trees and shrubs which encroached upon the roadway.

The respondent presented a claim to the county for damages, and, this being refused, the present action was brought for the purpose above indicated.

The only question involved upon this appeal is whether, under the evidence, the respondent is entitled to treble damages. In passing, it may be said that the trial court's finding of actual damages is well within the evidence. In considering the question of treble damages, attention must be first given to the statute.

█ Rem. Rev. Stat., § 939 [P. C. § 8557], provides that, whenever any person shall cut, or otherwise injure, the trees or shrubs on the land of another, without lawful authority, in an action brought against a trespasser,

" . . . if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be."

It will be observed that, by this statute, if judgment be given for the plaintiff, there is a mandatory direction for treble damages.

Section 940 [P. C. § 8558] provides:

"If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodlands, for the purpose of repairing any public highway or bridge upon the land, or adjoining it, judgment shall only be given for single damages."

It will be observed that, in order to exonerate the trespasser from treble damages by this statute, it must be made to appear (a) that the trespass was casual or involuntary; or (b) that the trespasser had probable cause to believe that the land upon which the trespass was committed was his own, or that of the person in whose service or by whose direction the act was done; or (c) that the tree or timber was taken from an uninclosed woodland for the purpose of repairing a public

highway or bridge upon the land or adjoining it; then judgment shall be entered for single damages.

In this case, it definitely appears that the trespass was not casual or involuntary, and it likewise appears that the cutting was not done to obtain timber for the repair of a highway. If the county is exonerated, it is by reason of the second clause, and that is, whether it had probable cause to believe that the land upon which the trespass was committed was that of the county. Construing this statute, this court has held that the spirit and intent thereof were not to award treble damages unless there entered into the trespass an element of wilfulness.

In *Bailey v. Hayden,* 65 Wash. 57, 117 Pac. 720, the court, after considering the statutes above referred to, said:

"We are constrained to hold that the statute, construing the two sections together according to their most obvious intent, contemplates but one measure of damages—the actual and compensatory—which shall be trebled as against the wilful wrongdoer and allowed singly as against the casual or involuntary trespasser."

The cases of *Gardner v. Lovegren,* 27 Wash. 356, 67 Pac. 615, and *Skamania Boom Co. v. Youmans,* 64 Wash. 94, 116 Pac. 645, are to the same effect.

While it is necessary, under the cases referred to, that there be some element of wilfulness, it is not necessary to prove intent on the part of the trespasser.

In *Harold v. Toomey,* 92 Wash. 297, 158 Pac. 986, it is said:

"Although the statute is penal in its nature, this action is not a criminal or penal action, but is merely a civil action for tortious damages, with added penal damages. It is not, therefore, necessary to prove an intent on the part of the tort feasor, any more than the commission of the act and its consequences."

We come then to the question as to whether, under the facts of this case, there is an element of wilfulness. The evidence shows that the slashing was done at the direction of the commissioner from the district in which the property was located, and was carried on under a road supervisor for that district. The commissioner testified that he

" . . . had never got permission from plaintiff or any other person to cut these shrubs across the line. No effort was made to determine the line before the cutting, except that they assumed that the telephone poles were 5 feet from the property line, in on the right-of-way. The county had never asserted or claimed any title to the property inside of the stone fence to the knowledge of witness."

The road supervisor, under whose supervision the slashing was done, testified that:

"He was road supervisor and foreman for Commissioner Glover. He was actually present when the cutting and slashing of this shrubbery was done and they cut beyond the stone under witness's direction. That he told them to go ahead and disregard the fence, but not to go more than 5 feet beyond the line of telephone poles. He did not [know] where this line was, made no effort to determine the line, except that he figured that the telephone poles were 5 feet in from the property line, on the right-of-way. The right-of-way of this road is only 30 feet. That witness didn't know the distance of the telephone poles from the center of the traveled strip, as he had never measured it. They saw the stone fence when they cut up to it, but his instructions were to cut in not to exceed 5 feet on the property side of the line of telephone poles. The line of telephone poles was at least 6 feet in on the property side of the stone fence. Witness directed the men to cut the shrubbery inside of the fence up to the telephone poles. . . ."

This witness also testified that, within ten or fifteen minutes after the cutting began, they discovered the

stone fence, but, notwithstanding this, continued the slashing.

As indicated, the evidence shows that the traveled portion of the roadway was in approximately the center of the thirty feet. If the poles had been six feet out into the roadway on that thirty foot strip, they would have stood in close proximity to the traveled portion of the highway. Instead of this, as the evidence shows, they were approximately twenty-two feet west of the center and on the property of the respondent. The county commissioner and the road supervisor knew, or were charged with knowledge of, the width of the highway. Knowing this fact, they must have known that, if the telephone poles were six feet out in the highway, they would come close to the traveled portion thereof. Notwithstanding this, they ordered the slashing to proceed to five or six feet beyond the line of the telephone poles. In addition to this, the stone fence or wall, which had been erected, from one foot to one and one-half feet high, on the northern portion of the east line of the property, was a definite warning that there was a claim, at least, that that marked the boundary line between the respondent's property and the highway.

It necessarily follows that the cutting of the trees and the slashing of the shrubs were done in disregard of the rights of the respondent, and that there was in it an element of wilfulness.

The judgment will be affirmed.

STEINERT, C. J., MILLARD, BLAKE, and GERAGHTY, JJ., concur.