[No. 32925. *En Banc.* November 22, 1955.]

GRAYS HARBOR COUNTY, *Respondent*, v. BAY CITY LUMBER COMPANY, *Appellant*, STILLMAN SAWYER *et al.*, *Cross-appellants.*[1]

[1]Reported in 289 P. (2d) 975.

*Donley & Ingram,* for appellant.

*John E. Close,* for cross-appellants.

*Robert L. Charette,* for respondent.

*Holman, Mickelwait, Marion, Black & Perkins* and *Burroughs B. Anderson, amici curiae.*

ROSELLINI, J.—This is a damage action for the conversion of certain timber owned by the respondent, Grays Harbor county, referred to herein as "the county." The original trespass and conversion were committed by the cross-appellants, who are referred to as "the loggers." The county elected to bring its action against the party to whom the loggers sold the timber after it was cut, Bay City Lumber Company, the appellant, referred to herein as "the lumber company," which interpleaded the loggers as cross-defendants.

The logs in question were taken from the north half of section 12, township 20 north, range 11 west W. M., Grays Harbor county, owned by the county. The north half of the southwest quarter of this section is owned by W. C. Abel, who, prior to the trespass, sold to the loggers, for a consideration of four thousand dollars, the right to cut the merchantable timber growing thereon. At the time of this sale, Abel represented to the loggers that the only merchantable

timber in that vicinity was located on the eighty-acre tract owned by him and that the timber stood in four distinct areas or patches.

The tract being unmarked, the loggers attempted to secure the services of a surveyor employed by Rayonier, Inc., a company which conducts extensive timber operations in Grays Harbor county. They were told that the surveyor would not be available for several weeks. Deciding that they could not afford to wait that length of time, the loggers attempted to survey the land themselves. Referring to a Metsker map and a Geodetic survey map, using a compass and a length of rope, and starting from a point which they believed to be a recognized marker, they attempted to locate themselves on their property. They established a north cutting line, beyond which they did not cut. They observed approximately one hundred feet of merchantable timber lying beyond this cutting line. An aerial photograph (taken after the logging operation was finished), showing four distinct patches of timber within the area which their attempted survey established, was introduced in evidence by the county.

All of these facts were included in the trial court's findings. There were findings that the value of the timber was $8 per thousand board feet at the time and place of the original conversion (stumpage value), and $35 per thousand board feet at the time and place of conversion by the lumber company—the difference being the value added by cutting and transporting the logs to the lumber company's place of business.

For the 431,300 board feet converted by the lumber company, judgment was given for the county against the lumber company and for the lumber company against the loggers in the sum of $15,095.50, being $35 per thousand board feet, together with interest at six per cent per annum from the date of the last conversion, the court having found as a fact that the taking of the logs by the loggers was "heedless and wanton, not unintentional and inadvertent," and that the loggers, by their conduct, showed that they recognized the need of a survey but decided to proceed without one.

■ While, as the appellants contend, this court has said many times that punitive damages are not recoverable in the absence of a statute expressly authorizing them, we are also committed to the rule denying to the subsequent converter the right to deduct the value added by the labor and expenditures of the original converter when the original conversion was willful. The rule was first recognized in *Chappell v. Puget Sound Reduction Co.*, 27 Wash. 63, 67 Pac. 391, and most recently stated in *Watkins v. Siler Logging Co.*, 9 Wn. (2d) 703, 116 P. (2d) 315, as follows:

"If the original conversion was in *mala fides,* then damages in an action against a subsequent converter should be based upon the market value of the property as of the time and place the defendant first exercised control and dominion over it, and this rule applies even though the subsequent converter is an innocent purchaser for value. *Wooden-Ware Co. v. United States*, 106 U. S. 432, 27 L. Ed. 230, 1 S. Ct. 398; *United States v. Perkins*, 44 Fed. 670; *Central Coal & Coke Co. v. John Henry Shoe Co.*, 69 Ark. 302, 63 S. W. 49; *Tuttle v. White*, 46 Mich. 485, 9 N. W. 528, 41 Am. Rep. 175."

No reference was made to earlier Washington cases.

The principal question to be determined on this appeal is whether the trial court was justified in finding that the acts of the loggers were willful and in *mala fides* within the meaning of the quoted rule of damages. In its memorandum decision, the court made it clear that it had found no actual intent to trespass on the part of the loggers, but felt that they must be held to have acted in bad faith, as a matter of law, when they went into unmarked territory and proceeded to cut timber without benefit of a survey made by a "qualified" surveyor.

The essence of the court's conclusion is that, in proceeding without a survey, the loggers knowingly ran the risk of trespassing, that is to say, they recognized the possibility that the line which they drew might lie beyond the true boundary of the land on which they had a right to cut timber. If this knowledge rendered the resulting trespass willful or in bad faith within the meaning of the pertinent

rules of damages, the judgment of the trial court must be upheld.

We have been unable to discover any statute imposing upon one who purchases timber in unmarked territory the duty to obtain a survey by a licensed or qualified surveyor, and we have found no case which deals with the precise problem presented here. As McCormick on Damages 497, § 126, has commented: "Classifying trespassers as 'innocent' and 'willful' is easy, but actually distinguishing the sheep from the goat is not so easy." Before laying down such an unswerving line of demarcation, it is well to examine the theory of damages and the cases in which the higher measure has been imposed.

[2] This court early committed itself to the view that the doctrine of exemplary or punitive damages is unsound in principle and that such damages cannot be recovered except when explicitly allowed by statute. We have so held from *Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45, 25 Pac. 1072 to *Anderson v. Dalton*, 40 Wn. (2d) 894, 246 P. (2d) 853, 35 A. L. R. (2d) 302. However, we have adopted the punitive measure of damages where a trespass or conversion is willful or in bad faith. *Fischmaller v. Sussman*, 167 Wash. 367, 9 P. (2d) 378; *Watkins v. Siler Logging Co., supra*; *Parks v. Yakima Valley Production Credit Ass'n*, 194 Wash. 380, 78 P. (2d) 162; *Glaspey v. Prelusky*, 36 Wn. (2d) 592, 219 P. (2d) 585. In the latter two cases, the converted goods were of fluctuating value, and the measure of damages imposed was the highest market value within a reasonable time after the taking. See, also, *United States v. Kelly*, 3 Wash. Terr. 421, 17 Pac. 878.

It was recognized in the early case of *Bailey v. Hayden*, 65 Wash. 57, 117 Pac. 720, an action brought under the treble-damage statute (now RCW 64.12.030, 040), that the wrongdoer is punished and the owner more than compensated when no allowance is made for the value added by the former's labor and expenditures. We held in that case that the measure of damages to be trebled was the stumpage, not the market value after cutting and removal. In discussing the common-law rule allowing recovery of the

higher value where the trespass is willful, we stated that such damages are punitive, not merely compensatory, and quoted from *Beede v. Lamprey*, 64 N. H. 510, 15 Atl. 133, 10 Am. St. 426, as follows:

" 'In cases of conversion by wilful act or fraud, the value added by the wrongdoer after conversion is sometimes given as exemplary or vindictive damages, or because the defendant is precluded from showing an increase in value by his own wrong, and from claiming a corresponding reduction of damages.' "

In commenting on the quoted portion of the New Hampshire case, we said:

"But whether the larger damages be frankly called vindictive damages, or are allowed on the last mentioned ground without any express name, their nature is the same. It is obvious that the increased measure is allowed, not as compensation to the person wronged, but as punishment to the wrongdoer. It is not a mere question of terms, but of the inherent quality of the thing. The increased measure is punitive in its very nature, in that it exceeds the true measure of compensation. It is plain that the person whose trees are cut suffers exactly the same injury where the trespass is involuntary as where it is wilful. In each case he suffers the loss of his trees."

■ It is argued that, since the owner may replevy his property wherever he may find it, he should be able to recover its value at whatever time and place he is entitled to replevy it. But this argument is equally valid in the case where the conversion was inadvertent, and yet under such circumstances the wrongdoer is not liable in damages for the increased value. The theory under which replevin is allowed bears no consistent relation to the various measures of damage allowed when the latter remedy is elected. For example, the innocent purchaser from a willful converter is liable in damages only for the value of the goods at the time and place of his own conversion and cannot be held for any value which he may add to them by his own labors. Yet, if the owner finds the goods in the hands of an innocent purchaser after he has enhanced their value, they may be replevied, provided, of course, that the enhancement in

value has not become so great as to divest the original owner of title. *Meyers v. Gerhart*, 54 Wash. 657, 103 Pac. 1114. In view of these considerations, the mere fact that the goods can be replevied does not justify the imposition of punitive damages.

The factors and principles which have motivated the courts to accept or reject the doctrine of punitive damages were discussed at length in *Spokane Truck & Dray Co. v. Hoefer, supra*. This court concluded that justice could best be served by rejecting the doctrine and confining the plaintiff's recovery in a civil action to compensatory damages. Quoting from 2 Greenleaf, Evidence, 240, § 253, we said:

" 'Damages are given as a compensation or satisfaction to the plaintiff for an injury actually received by him from the defendant. They should be precisely commensurate with the injury, neither more nor less; and this whether it be to his person or estate.' "

To allow the imposition of punitive or exemplary damages in a civil action, we said, is to punish the offender without the procedural safeguards guaranteed in a criminal trial: the presumption of innocence, the privilege against self-incrimination, and (under the practice of admitting depositions in evidence), the right to meet the witnesses against him face to face. Furthermore, where a fine is imposed in a criminal action, the proceeds are paid to the state for the benefit of society as a whole, for whose protection the offender is punished. Where punitive damages are imposed in a civil action, on the other hand, the proceeds are not used to defray the expenses of administering the criminal law but accrue to the exclusive benefit of the plaintiff:

"It is to be presumed that the state has fully protected its own interests, or as fully at least as they could be protected by laws, when it provides for the punishment of crime in its criminal statutes, and fixes the fine at a sum which it deems commensurate with the crime designated; hence, punitive damages cannot be allowed on the theory that it is for the benefit of society at large, but must logically be allowed on the theory that they are for the sole benefit of the plaintiff, who has already been fully compensated; a theory which is repugnant to every sense of justice." *Spokane Truck & Dray Co. v. Hoefer, supra*, p. 53.

In spite of the conviction with which it repudiated the doctrine of punitive damages in the above case, and in spite of the fact that it has generally adhered to that view throughout its subsequent history, this court has undoubtedly carved out an exception in cases of willful trespass and conversion. As the rule is applied in a conversion action, it lacks at least one of the objectionable features of the punitive damages recoverable in other tort actions. The jury is not given an unlimited discretion in arriving at the amount of damages to be awarded but is held to a comparatively fixed standard, the market value of the converted property at the applicable time and place.

■ Because the rule allowing a higher measure of damages in cases of willful conversion is in conflict with our frequently expressed policy with regard to punitive damages, it should be strictly limited in its application to those situations in which the *mala fides* of the defendant's act is proven by a preponderance of the evidence. That is, it should be shown that the defendant either intended to deprive the plaintiff of his property or, having knowledge of facts sufficient to put him on notice of the plaintiff's ownership, acted in reckless disregard of the probable consequences.

This policy is not in conflict with our cases. In *Watkins v. Siler Logging Co.*, *supra*, the defendant's good or bad faith was not at issue, that question having been determined in a prior action which was held to be *res judicata*. In *Fischnaller v. Sussman*, *supra*, the defendant had actual knowledge of the plaintiff's ownership of the property which he converted to his own use. *Parks v. Yakima Valley Production Credit Ass'n*, *supra*, and *Glaspey v. Prelusky*, *supra*, were suits brought against mortgagees for unauthorized sales of mortgaged property, and the court applied the rule that, where one has possession of another's property for a specified purpose and, contrary to that purpose, makes an unauthorized sale, his act is willful and he must pay the highest market value of the property within a reasonable time after the sale. The goods in both cases were of fluctuating value and the damages were in fact compensatory, under the the-

ory, applicable in such cases, that the owner is deprived of the right to hold his goods and sell them in the most advantageous market.

In all of the common-law actions we have been able to find in our reports wherein the defendant's act has been characterized as willful, he either knew that the property in question did not belong to him or had notice of an adverse claim. *Wooden-Ware Co. v. United States,* 106 U. S. 432, 27 L. Ed. 230, 1 S. Ct. 398, followed in *Watkins v. Siler Logging Co., supra,* involved a trespass committed with full knowledge of the government's ownership.

 One whose trees have been cut by another without authority may elect to seek his remedy under RCW 64.12-.030, 040, providing for the assessment of treble damages if the defendant cannot show that his act was excusable. In cases decided under this statute, wherever we have upheld the awarding of treble damages, it appears that the defendant likewise knew that he was not the owner of the trees or was aware of an adverse claim. *Hirt v. Entus,* 37 Wn. (2d) 418, 224 P. (2d) 620; *Ross v. Norton,* 36 Wn. (2d) 835, 221 P. (2d) 476; *Mullally v. Parks,* 29 Wn. (2d) 899, 190 P. (2d) 107; *Lawson v. Helmich,* 20 Wn. (2d) 167, 146 P. (2d) 537, 151 A. L. R. 930; *Jorgensen v. Johnson,* 194 Wash. 703, 77 P. (2d) 374; *Fredericksen v. Snohomish County,* 190 Wash. 323, 67 P. (2d) 886, 111 A. L. R. 75 (county cut trees beyond plaintiff's wall, being charged with knowledge of width of street); *Martinson v. Gregorson,* 129 Wash. 701, 225 Pac. 243 (defendant had "no good reason to believe" the timber was his own); *Harold v. Toomey,* 92 Wash. 297, 158 Pac. 986; *Simons v. Wilson,* 61 Wash. 574, 112 Pac. 653; *Northern Pac. R. Co. v. Myers-Parr Mill Co.,* 54 Wash. 447, 103 Pac. 453 (defendant made no claim that trespass was casual or involuntary). While the defendant in *Nethery v. Nelson,* 51 Wash. 624, 99 Pac. 879, did not know that he was trespassing, he had made no effort whatsoever to locate the section lines.

In at least three cases arising under the treble-damage statute, we have limited recovery to single damages even though the defendant knew that his right to cut the trees

was in question. *Gibson v. Thisius*, 16 Wn. (2d) 693, 134 P. (2d) 713; *Chappell v. Puget Sound Reduction Co., supra; Tronsrud v. Puget Sound Traction Light & Power Co.*, 91 Wash. 660, 158 Pac. 348.

*Gardner v. Lovegren*, 27 Wash. 356, 67 Pac. 615, was another action brought under the treble-damage statute. The defendants owned land adjoining that of the plaintiff. Believing that they knew where the true boundary lay, they began to cut trees; but being apprized that they were probably trespassing, they had a survey made and immediately discontinued their operation. The jury's determination that the trespass was unintentional was not questioned on appeal.

The defendant in *Hawley v. Sharley*, 40 Wn. (2d) 47, 240 P. (2d) 557, was hired to cut timber on land adjoining and adjacent to the plaintiff's property. Apparently without having made any effort to ascertain the true boundaries, he strayed onto the plaintiff's land and cut timber there. His act was found to be inadvertent, and the verdict was sustained in this court.

In *Gunstone v. Chicago, Milwaukee & Puget Sound R. Co.*, 79 Wash. 629, 140 Pac. 907, a common-law conversion action, the defendant railway company's officials knew that the logs in question belonged to the plaintiff; its agents who removed them did not. We held that the defendant was not guilty of willful conversion. In *Smith Co. v. Hardin*, 133 Wash. 194, 233 Pac. 628, a mortgagor sold a wheat crop without the consent of the mortgagee, in law a willful conversion. We nevertheless required him to pay to the mortgagee only the market value of the crop at the time of the taking.

In the case before us, the evidence tended to show and the trial court found, as a fact, that the loggers had been led to believe that all of the merchantable timber in the area logged was included in the sale. Their attempted survey showed all but one hundred feet of the merchantable timber to be within the area covered by their purchase. While we agree with the trial court to the extent that their conduct in proceeding without a reliable survey was negligent, the facts as found by the court show that they did not trespass

willfully or in reckless disregard of the probable consequences. While the care which they exercised was slight, they did attempt to establish the boundary line. The loggers testified that their attempted survey was made with a tripod and compass with a plumb bob and telescopic sight and a length of rope which they had previously measured. One of them had at one time been a rodman, and another had been interested in the use of the compass and had helped his father in running lines.

Inasmuch as one hundred feet of merchantable timber stood outside the line as drawn by the loggers, it must have appeared to them, not that they were trespassing, but that as a result of their amateur survey they had excluded a part of the timber for which they had contracted. There was nothing furtive about their undertaking. All of the logs were marked with the loggers brand, "BO." Logs were delivered and sold openly to the lumber company. The county did not assert its claim until some months after the operation was completed and the logs were sold to the defendant lumber company.

Finding no precedent which compels us to hold that, as a matter of law, the failure to have a survey made, under such circumstances, is willful or wanton conduct or conclusive evidence of bad faith, and taking into consideration the repugnance with which this court has persistently viewed the awarding of punitive damages, we feel no strong compulsion to invade the legislative province and establish such an absolute criterion for the imposition of civil punishment.

■ Inasmuch as the evidence fails to support a finding of bad faith on the part of the loggers, the measure of damages should have been the stumpage value of the timber removed, not the market value at the time and place of the lumber company's conversion. The trial court made a finding that the trees were worth $8 per thousand board feet immediately prior to the removal thereof by the loggers. While there is some contention that this finding was unsupported by the evidence, it was within the range of testi-

mony and will not be disturbed by this court. *Becwar v. Bear*, 41 Wn. (2d) 37, 246 P. (2d) 1110, and case cited therein.

Interest at six per cent per annum was awarded from the date of the original conversion by the loggers. It is contended that, the claim being unliquidated, interest should have been allowed only from the date of judgment. Appellants rely on the case of *B. & B. Bldg. Material Co. v. Winston Brothers Co.*, 158 Wash. 130, 290 Pac. 839, an action in the nature of conversion to recover for the loss of a truck negligently destroyed while in the possession of defendant as a bailee. We applied the rule which we follow in contract actions, to the effect that if there is a dispute as to the value of the property which is the subject of litigation, and the value cannot be ascertained by mere computation or by reference to some reasonably certain standard, but must be ascertained by opinion evidence as to value, the damages are unliquidated and interest will be allowed on the recovery only from the date of the judgment. We stated that whenever, in a conversion action, interest had been allowed from the date of the conversion, the value of the property in dispute could be determined by mere computation or by reference to some reasonably certain standard.

However, in *McSorley v. Bullock*, 62 Wash. 140, 113 Pac. 279, the subject-matter was the stock of goods of a bankrupt corporation. Their market value was established by opinion evidence, and interest was allowed from the date of the conversion. The converted property in *Hofreiter v. Schwabland*, 72 Wash. 314, 130 Pac. 364, was a house. The measure of damages in *Wylde v. Schoening*, 96 Wash. 86, 164 Pac. 752, was the value of the note in question as measured by the value of the land by which it was secured, less the amount of certain other notes and interest, certainly not determinable by reference to any reasonably fixed standard. The measure of damages in *Smith Co. v. Hardin, supra,* was the market value of wheat at the time and place of the taking. In *Watkins v. Siler Logging Co., supra,* decided subsequent to the case relied upon by the appellants, it was necessary to determine by opinion evidence the market value of

the logs in question, as it was in the case at bar. In all of these instances, interest was allowed. It is apparent, then, that our cases fail to support the rule applied in *B. & B. Bldg. Material Co. v. Winston Brothers Co., supra.*

As stated in 36 A. L. R. (2d) 337, at pp. 348, 349, the general rule in actions of trover and conversion is that interest is allowed from the date of the conversion. Considering the fact that the plaintiff has been deprived of the use of his property or its proceeds during the interim, the rule seems to us to be a salutary one. Since, with the one exception referred to above, we have consistently allowed the recovery of interest where it was asked, the rule of *B. & B. Bldg. Material Co. v. Winston Brothers Co., supra,* should be confined to actions where, as in that case, the property has been unintentionally lost or destroyed while rightfully in the defendant's possession. The trial court did not err in awarding interest from the date of the conversion.

Other assignments of error on behalf of the appellant and cross-appellants have been considered and found to be without merit.

The judgment is reversed in part and remanded with directions to enter a judgment in conformity with the views expressed herein. The appellant and cross-appellants shall recover their costs.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, FINLEY, and OTT, JJ., concur.

WEAVER, J. (dissenting)—I agree with the view that the doctrine of exemplary or punitive damages is unsound in principle, and that such damages cannot be recovered except when explicitly allowed by statute. However, the principle that the law will not permit a willful wrongdoer to benefit by his wrongful act is of equal dignity. In a sense, this may be said to be punitive if one is considering only the position of a person caught appropriating property of others; but, to my mind, there is an additional consideration.

That a willful wrongdoer cannot benefit by his wrongful act is based upon the theory, not of punishing the wrongdoer, but of recognizing the right of the true owner to his

property, especially when found in the possession of another.

Under the majority opinion, all that one has to do to force an owner to "sell" his property is to use a compass and a piece of rope in a casual and amateur manner.

It is not for this court to hold that when one purchases timber in unmarked territory it *must* be surveyed by a licensed or qualified surveyor. It is sufficient to say: One must use such means as may reasonably be expected *under the circumstances* to segregate his property from that of another, in order that it may be said he acted in good faith. If the circumstances require a survey, then so be it.

The action of the loggers in the instant case was so wantonly negligent in its disregard of the property rights of others, that the conversion was *mala fides*.

In my opinion, the judgment of the trial court should be affirmed.

MALLERY and HILL, JJ., concur with WEAVER, J.